**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SYLVIA MONDERO,
              *Plaintiff-Appellant,*

v.

SALT RIVER PROJECT, a political
subdivision of the State of
Arizona,
              *Defendant-Appellee.*

No. 03-16173

D.C. No.
CV-01-02465-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
February 16, 2005—San Francisco, California

Filed March 15, 2005

Before: Arthur L. Alarcón, Eugene E. Siler, Jr.,* and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Alarcón

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

**COUNSEL**

John A. Conley, Law Office of James Burr Shields, Phoenix, Arizona, for the plaintiff-appellant.

John J. Egbert, Jennings, Strouss & Salmon, Phoenix, Arizona, for the defendant-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

Sylvia Mondero appeals from the order granting Salt River Project's ("SRP") summary judgment motion to dismiss her claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* She contends that, because of her gender, she was denied an opportunity to serve as an operations journeyman, with on-the-job training and a guarantee of a permanent assignment that had been offered to male employees.

Ms. Mondero filed a timely notice of appeal. We affirm because we conclude that Ms. Mondero has failed to demonstrate that SRP's decision to discontinue the experimental operations journeyman on-the-job training program ("experimental program") was motivated by gender discrimination.

**I**

**A**

In November 1998, SRP notified five male electricians who were working in the Facilities Services Department that they

were going to be laid off due to a restructuring of that department. Union representatives acting on behalf of the Facilities Services Department electricians ("male electricians") inquired whether they might temporarily be loaned to the Fault Locating Department.

The five male electricians lacked the experience working with high voltages required of an operations journeyman. Roger Hurliman, the supervisor of the Fault Locating Department, agreed with the union representatives that SRP should determine whether to experiment with a trial on-the-job training program for the five male electricians as an alternative to an apprenticeship program.

Mr. Hurliman consulted with Kevin Nielsen, the manager of SRP's Electric Systems Operations, and received input from the working foremen who would provide the on-the-job training. After these consultations, Mr. Hurliman entered into an agreement with the union to initiate an experimental program for the male electricians on a trial basis.

The letter agreement, signed by Phillip Harris, the union's Assistant Business Agent, and Phillip Thurston, a Senior L/R Administrator for SRP, provides as follows:

> It is the intent of this agreement between IBEW Local 266 and Salt River Project (SRP) to provide Electricians in Facilities Services another career option in light of the current reorganization in Facilities Services. . . .

> . . . .

> It is mutually agreed and understood that the agreement set forth herein is entered into on a non-precedential basis and neither party may use any factors indigenous to this particular matter as precedent setting for any future incidents of like nature. Also,

> this settlement does not require or obligate Salt River
> Project to take similar action in any future incidents
> of like or similar nature.

In November 1998, SRP notified the male electricians that they would work on loan within the Fault Locating Department. They were informed that they would have to qualify for a commercial driver's license, attend classes, and receive on-the-job training. They were also told that if they successfully completed the experimental program, they would be allowed to bid for openings as operations journeymen. One of the electricians was unable to qualify for a commercial driver's license and dropped out of the experimental program. The other male electricians entered into the experimental program in the Fault Locating Department in January 1999. Pursuant to the terms of the agreement with the union, they were paid full journeyman-level wages from the outset of the trial program. Although they received full journeyman-level wages, the work they performed during their training was at the level of a serviceman, which is below the pay level of a journeyman.

In August 1999, operations journeyman positions became available. Each of the male electricians who participated in the experimental program became an operations journeyman.

**B**

Ms. Mondero was hired by SRP in 1987 as a temporary electrician in the Groundwater Services Department. She became a regular employee in April 1988. One other electrician was employed in the Groundwater Services Department. He had seniority over Ms. Mondero.

In 1998, SRP management concluded that two electricians were not needed for the projected work load in the Groundwater Services Department. Ms. Mondero and the other electrician were assigned to perform nonelectrical work as needed.

Nevertheless, she continued to receive journeyman electrician wages.

Ms. Mondero was notified in 1998 that the need for more than one electrician was being assessed because the work load had decreased. She was informed that "there's a possibility we might have to lay you off. We don't know right now." Following this notice of a possible layoff, Ms. Mondero bid on several positions outside of the Groundwater Services Department. In March 1999, she bid on a position as an Operations Journeyman in the Fault Locating Department. She did not receive the position.

Ms. Mondero was notified on May 17, 1999 that she would be laid off from her electrician position in the Groundwater Services Department. This termination occurred six months *after* the male electricians were notified that they were being laid off as employees of the Facilities Services Department.

Ms. Mondero was given the option of continuing to work for SRP on a nine-month temporary loan assignment in the Fault Locating Department. Ms. Mondero requested that she be allowed to participate in the type of experimental program offered to the male electricians. Her request was denied. Instead, she was offered a position in that department as an operations serviceman. After consulting with the union, she accepted the offer of a temporary assignment as a serviceman on June 3, 1999. The agreement provided that the management of the Fault Locating Department had the right to terminate the assignment at any time.

Ms. Mondero was not paid journeyman's wages for her work as a serviceman, nor did she receive on-the-job training as an operations journeyman. As a serviceman, she was paid twenty-one dollars an hour instead of the twenty-six dollars an hour she had received as a journeyman electrician in the Groundwater Services Department.

On December 2, 1999, Ms. Mondero was informed that she would be laid off from her temporary serviceman position in the Fault Locating Department. On December 13, 1999, Ms. Mondero filed a charge of sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On May 15, 2001, the EEOC issued a determination on the merits of Ms. Mondero's charge. The EEOC concluded that "there is reasonable cause to believe [SRP] discriminated against [Ms. Mondero] because of her sex, female, when they denied her the opportunity to qualify for a permanent position as an Operations Journeyman."

At the time this action was filed, Ms. Mondero was enrolled in SRP's electrician apprenticeship program. This program focuses on primary or higher voltages in the distribution system. Ms. Mondero did not receive this type of training during her 1985 apprenticeship program for inside wireman.

Ms. Mondero filed this gender discrimination action in the district court on November 18, 2002, pursuant to Title VII.

## II

In its motion for summary judgment, SRP set forth two reasons why Ms. Mondero was not permitted to participate in the same type of on-the-job program negotiated with the union for the male electricians. SRP alleged that it declined to repeat the experimental program for Ms. Mondero because it did not want to pay journeyman-level wages for serviceman work. SRP also asserted that it declined Ms. Mondero's request because the experimental program was still in progress, and it was not sure whether it was the best way to fill its needs for properly trained operations journeymen.

In response, Ms. Mondero contended that the motion should be denied because she had produced sufficient direct and indirect evidence to raise a genuine issue of material fact

regarding whether SRP's justification for not repeating the experimental program was pretextual.

Ms. Mondero offered the deposition testimony of Chester Atkisson, one of the male electricians, to demonstrate that SRP acted with discriminatory animus in rejecting her request that SRP repeat the experimental program that had been offered to the male electricians. Mr. Atkisson testified that he overheard Tom Milne and Robert Utter, two of the working foremen who served as trainers in the experimental program, state: "They bring a woman to do a man's job?" Ms. Mondero argued that this biased comment was relied upon by Mr. Hurliman in rejecting her request that SRP repeat the experimental program for her because he testified at his deposition that he took into consideration the concerns of the working foremen in determining whether to experiment with an on-the-job training program for operations journeyman.

Mr. Atkisson also testified that a female operations journeyman "was totally against what [members of Fault Locating Department] believed in." He further testified that when Ms. Mondero began working in the Fault Locating Department in June 1999, she came into a "hornet's nest."

The district court granted SRP's motion for summary judgment holding that Ms. Mondero failed to present any direct evidence of discriminatory animus against her because of her gender. The court also determined that Ms. Mondero's indirect evidence of an alleged pretext was not specific or substantial.

Ms. Mondero has filed a timely appeal. The district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III

Before this court, Ms. Mondero maintains that the district court erred in concluding that she failed to offer direct evi-

dence of gender bias or present specific and substantial indirect evidence that SRP's justification for not permitting her to receive on-the-job training as an operations journeyman was pretextual. "We review de novo a grant of summary judgment and must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

**[1]** A plaintiff can establish a *prima facie* case of a violation of Title VII by introducing direct evidence that an employer expressly discriminated against a job applicant or employee because of his or her gender, or by presenting indirect evidence that the plaintiff (1) was a member of a protected class, (2) she applied and was qualified for a position which she sought, (3) despite being qualified, she was rejected, and (4) after she was rejected, the position remained open and the employer continued to seek applications from people with comparable qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (explaining that the four-factor test is sufficient to establish a *prima facie* case); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (holding that a *prima facie* case may be based on direct evidence or on a presumption that arises when the four-part showing under the *McDonnell Douglas* framework is made).

## A

Noting that the SRP did not contest that Ms. Mondero had established a prima facie case of discrimination, the district court concluded, however, that the presumption of unlawful discrimination had been rebutted by SRP's articulation of "a legitimate, non-discriminatory reason for its employment decision."

In its responsive brief before this court, SRP does not contend that Ms. Mondero failed to demonstrate that it denied her

request that it repeat the experimental program that it had offered to the male electricians when they were laid off six months earlier from their positions in the Facilities Services Department. Because the applicability of the *McDonnell Douglas* rebuttable presumption of discriminatory animus has been conceded by SRP, and the parties have not presented this question to this court, we decline to do so *sua sponte* because we agree with the district court that SRP presented legitimate, nonpretextual reasons for denying her request for on-the-job training as an operations journeyman.

**B**

Ms. Mondero contends that she offered direct evidence that Mr. Hurliman rejected her request for on-the-job training based on the undisputed fact that he considered the concerns of Mr. Milne and Mr. Utter regarding the experimental program. She argues that the bias expressed by Mr. Milne and Mr. Utter that "[t]hey bring a woman to do a man's job?" motivated his rejection of Ms. Mondero's request for on-the-job training.

While it is true that Mr. Hurliman testified during his deposition that he considered the concerns of the foremen, that consultation occurred in December 1999, six months before Ms. Mondero requested that the experimental program be repeated for her. In fact, Mr. Hurliman testified that he decided to try the experimental program after considering the views of the foremen who would do the training. Mr. Hurliman stated that "[t]heir only concern would have been whether [the electricians from Facilities Services] were qualified to work the primary voltages." There is no evidence in the record that Mr. Milne or Mr. Utter communicated their alleged gender bias to Mr. Hurliman at any time, or that he was even aware of it.

In her response to the motion for summary judgment, Ms. Mondero submitted a letter to the district court that Michael

T. Kelly, Senior Employee Relations Representative, had delivered to the EEOC, on behalf of SRP, in which he discussed her charge of gender discrimination. Attached to the letter were two statements from working foremen in which they evaluated the performance of the male electricians who participated in the experimental program. Each foreman was asked the following question: "For future manpower needs, would you agree that the use of inside wiremen to perform Operations Journeyman work is a good business decision." Mark Acuna replied:

> I think they should serve a 2 year apprenticeship before they are allowed to work as journeymen. They don't understand the hazards of working on the SRP distribution system. They have been at FLO for 16 months and they are not qualified or responsible enough to run primary crews. Two of them might be able to run a secondary/St. Light crew.

> I think it was a good idea to bring them to FLO, to save their jobs, but they need a lot of experience in the field, before they can be expected to perform as a Operations Journeyman.

Frank Hurtado responded as follows:

> No, because the inside wiremen have not been exposed to the hazards, dealing with primary voltage. They do not understand the SRP distribution system and could not be expected to work as an efficient journeyman. The wiremen that we have hired, have had 16 months of training and there are 2, that could possibly run a crew that repairs secondary, services and st. lights.

> They are not responsible journeymen, yet they get the same hourly wage.

**[2]** Mr. Kelly stated in his letter to the EEOC that "these statements represent the nature and substance of reports received by management at the time the decision to discontinue the program was made." Thus, there is no direct evidence that the statements received by SRP's decision makers from any of the foremen regarding the experimental program reflected any gender bias against Ms. Mondero.

**[3]** We agree with the district court that Ms. Mondero has failed to present any evidence that the alleged comments by Mr. Milne and Mr. Utter related in any way to SRP's decision not to repeat the experimental program for Ms. Mondero. Stray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (holding that a comment by a supervisor that he intended to get rid of all the "old timers" was insufficient to create a genuine issue of material fact because "the comment was not tied directly to [the] layoff."). An agent's biased remarks against an employee because of his or her gender are admissible to show an employer's discriminatory animus if the agent was involved in the employment decision. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir. 1998). Ms. Mondero has failed to present any evidence that SRP declined to repeat the experimental program for her because SRP's decision makers were influenced or even aware of the alleged gender bias of some of its agents. The district court did not err in determining that Ms. Mondero failed to present any direct evidence that SRP's justifications for its employment action were pretextual, and not legitimate business decisions.

## IV

**[4]** Ms. Mondero also maintains that the district court erred in holding that she did not present specific and substantial evidence that SRP's justifications for declining her request to repeat the experimental program were not credible. A plaintiff is entitled to a trial on the merits of a Title VII claim if he or

she presents indirect evidence that "the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of pretense must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex." *Id.* at 1222 (internal quotations omitted).

In its motion for summary judgment, SRP articulated two reasons for declining Ms. Mondero's request to repeat the experimental program. First, it did not want to continue to pay journeyman-level wages for serviceman-level work. Second, SRP's management ultimately abandoned the experimental program because it concluded that the apprenticeship program for operations journeymen was the better way to fill the department's needs.

**[5]** It is undisputed that pursuant to SRP's collective bargaining agreement, it was required to pay the male electricians who participated in the experimental program journeyman wages of twenty-six dollars an hour while they were doing serviceman-level work which pays twenty-one dollars an hour. The male electricians were in the experimental program for six months. Assuming that they worked only a forty-hour week, the experimental program cost SRP at least $4,800 more for each participant than they would have received for the servicemen-level work they actually performed during their training. The total extra wages paid by SRP during the experimental program amounted to at least $19,200. Ms. Mondero has failed to present specific and substantial evidence that SRP's reluctance to pay operations journeyman wages for serviceman-level work is pretextual.

**[6]** Ms. Mondero also failed to present specific and substantial evidence that SRP's assertion that it concluded, after consulting with the foremen who provided on-the-job training to the male electricians, that a two-year apprenticeship program was a better way to prepare operations journeyman was

pretextual. In the two statements attached to SRP's EEOC letter, proffered into evidence by Ms. Mondero, Mr. Acuna and Mr. Hurtado recommended that inside wiremen should receive apprenticeship training before they are allowed to perform the duties of an operations journeyman. It was their opinion that the male electricians did not have sufficient training and experience after undergoing the experimental program to understand the hazards of working in the distribution system nor were they qualified to run primary crews.

Ms. Mondero argues that the fact that the male electricians were hired as operations journeymen after they completed the experimental program demonstrates that SRP's justification for declining to repeat the experimental program because the apprenticeship program better fills its needs for well-qualified operations journeymen is not credible. Ms. Mondero's syllogism can be stated as follows:

SRP initiated an experimental program for operations journeymen.

The male electricians completed the experimental program and were hired by SRP as operations journeymen.

Therefore, the apprenticeship program does not better fulfill SRP's needs for qualified operations journeymen.

This conclusion does not follow from the premises. The fact that the male electricians were hired as operations journeymen does not demonstrate that their training, qualifications, and experience were equal to that of the graduates of the operations journeyman apprenticeship program. As noted above, the inadequacies of the experimental program are clearly set forth in Mr. Acuna and Mr. Hurtado's statements.

## V

Ms. Mondero claims that the fact that SRP offered reasons for not repeating the experimental program to the EEOC that

were not presented in the motion for summary judgment supports an inference that each of the justifications presented is not credible. Mr. Kelly stated in his letter to the EEOC that at the time Ms. Mondero's request was denied, SRP did not need additional operations journeymen to meet its peak work load staffing. Mr. Kelly also asserted that the employers in the Fault Locating Department were too busy to provide on-the-job training for her because she applied at the beginning of the peak busy period. Ms. Mondero did not present specific and substantial evidence that either of these assertions is false. Ms. Mondero has failed to demonstrate that SRP's decision not to repeat the experimental program and to rely instead on the apprenticeship program was a false pretense for gender discrimination.

## VI

In addition to arguing that she has presented sufficient direct and circumstantial evidence of discrimination to create a genuine issue of material fact for trial, Ms. Mondero also points to the fact that she obtained a determination letter from the EEOC in her favor. The letter states, "[t]here is reasonable cause to believe Respondent discriminated against Charging Party because of her sex, female, when they denied her the opportunity to qualify for a permanent position as an Operations Journeyman." She asserts that this determination, in and of itself, should be sufficient to defeat SRP's motion for summary judgment.

[7] This argument is without merit. She fails to point to a single case holding that a determination letter from the EEOC is sufficient to create a genuine issue of material fact. She relies generally on *Plummer v. W. Int'l Hotels Co.,* 656 F.2d 502 (9th Cir. 1981), in which the court held that an EEOC determination letter is "a highly probative evaluation of an individual's discrimination complaint." *Id.* at 505. The fact that a determination from the EEOC is highly probative, however, does not support Ms. Mondero's contention that an

EEOC determination letter is somehow a free pass through summary judgment. In *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000), this court held that an EEOC reasonable cause determination did not create a genuine issue of material fact. *Id.* at 1283-84. Ms. Mondero attempts to distinguish this case based on the fact that in *Coleman*, the letter from the EEOC was only two sentences long, whereas the letter she received in her case was two pages long. She cites no cases in support of this distinction.

SRP correctly notes that the EEOC's letter does not offer any support for her attempt to show pretext in this case. The letter merely recites the facts that Ms. Mondero disclosed, and does not say anything at all about SRP's proffered legitimate nondiscriminatory reason.

## VII

During oral argument at the hearing on the motion for summary judgment, the district court stated: "[I]t strikes me that without direct evidence of discrimination, if you have not been discharged, it seems like you are fouling your own nest by suing your employer and staying there." Ms. Mondero asserts that this comment demonstrates that the district court is of the view that "circumstantial evidence in a discrimination case is, uniformily, of lessor value than direct evidence." Because we must review the district court's order de novo, the district court's ruminations have no effect on our appellate responsibility.

[8] Based on our independent review of the record, we are persuaded that Ms. Mondero has failed to demonstrate that SRP's justification for declining to repeat the experimental program was a pretext for gender discrimination.

**AFFIRMED.**