Teodosia **GROSZ**, Plaintiff,

v.

**THE BOEING COMPANY,
et al., Defendants.**

**No. SACV 02–71 CJC MLGX.**

United States District Court,
C.D. California,
Southern Division.

Oct. 2, 2006.

---

Andrew M. Volk, Craig R. Spiegel, Ivy D. Arai, Jeffrey T. Sprung, and Steve W.

Berman, Hagens & Berman, Seattle, WA, Kevin P. Roddy, Hagens & Berman, Los Angeles, CA, for plaintiff.

Barbara B. Brown and Neal D. Mollen, Paul Hastings Janofsky & Walker, Washington, DC, Jan E. Eakins and Jennifer S. Pucher, Paul Hastings Janofsky & Walker, Los Angeles, CA, for defendants.

## ORDER GRANTING DEFENDANT THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

CARNEY, District Judge.

### I. INTRODUCTION

Defendant The Boeing Company ("Boeing") moves for summary judgment on Plaintiff Teodosia Grosz's claims for discrimination and retaliation. Ms. Grosz's claims arise out of her layoff from Boeing after nearly five years of service at its Long Beach facility, and the amount of pay she received during her employment. Considering all the evidence in the light most favorable to Ms. Grosz, the Court finds that Boeing is entitled to summary judgment on Ms. Grosz's claims. Boeing provided undisputed evidence that Ms. Grosz was terminated during a legitimate reduction in force that occurred during the elimination of nearly 9,000 jobs from the Long Beach facility. It also provided undisputed evidence that Ms. Grosz was selected for layoff because there was no work left for her to perform. Ms. Grosz failed to show that these legitimate explanations were a mere pretext for discrimination and retaliation. Indeed, Ms. Grosz failed even to prove that any similarly situated male employee received more favorable treatment in terms of either the reduction in the workforce or compensation, or that she was discharged from Boeing because she raised complaints about gender discrimination at the company. This Court's role is to prevent discriminatory and retaliatory employment practices, not to second guess employment decisions made for legitimate business reasons, regardless of whether those decisions are unfair, arbitrary, or unreasonable. Accordingly, Boeing's motion for summary judgment is GRANTED.

### II. STATEMENT OF FACTS [1]

#### A. REDUCTION IN BOEING'S WORKFORCE: 1998–2001

Boeing acquired the McDonnell Douglas Corporation ("MDC") in 1997. Due to an economic downturn in the aerospace industry, Boeing found it necessary to undergo a widespread reduction in its workforce. This reduction started in March of 1998, when Boeing announced plans to phase out three major airplane programs by late 1999. Reynolds Decl. ¶ 4. The elimination of these three programs resulted in the loss of nearly 6,000 jobs in Long Beach over the course of two years. Reynolds Decl. ¶ 5. Layoffs resumed in 2001 after Boeing experienced a downturn in business due to lack of orders for its 717 aircraft. By the end of 2001, another 2,800 jobs had been eliminated at the Long Beach facility. Reynolds Decl. ¶ 6. In the four years between Boeing's acquisition of MDC and the end of 2001, Boeing reduced the number of employees at the Long Beach facility by nearly 9,000—from 12,000 in 1997 to just 3,200 in 2001. Reynolds Decl. ¶¶ 5–6.

#### B. MS. GROSZ'S EMPLOYMENT HISTORY AT BOEING

Ms. Grosz was hired by MDC in August 1996 as an Engineer Scientist Specialist.

---

1. For purposes of this motion, the Court considers the evidence in the light most favorable to the non-moving party, Ms. Grosz.

Tr. I 127:15–128:15, Ex. 4.[2] Ms. Grosz's initial salary was $48,100/year. Reynolds Decl. Ex. A. Boeing acquired MDC in 1997, and Ms. Grosz was employed in the Airplane Programs group of Boeing's Long Beach Division. Reynolds Decl. ¶ 7; Tr. IV 250:5–251:12. As an Engineer Scientist Specialist, Ms. Grosz was a member of the Southern California Professional Engineer Association ("SCPEA"), and the terms and conditions of her employment were governed by a collective bargaining agreement ("SCPEA Agreement") between Boeing and the SCPEA.

Ms. Grosz's first supervisor at MDC was a man named Andre Abboud. In January of 1997, Mr. Abboud gave Ms. Grosz a negative performance review. Grosz. Decl. Ex. 9. This review contained uniformly negative performance ratings, classifying her as below expectations in all categories. *Id.* Ms. Grosz filed a formal complaint to this review through her SCPEA representative and SCPEA Chairman Bill Klein. Grosz. Decl. ¶ 14 and Ex. 10. Her complaint alleged that Mr. Abboud discriminated against her because she was a woman when he prepared the review. As a result of this complaint, MDC concluded that Mr. Abboud's evaluation of Ms. Grosz's performance was premature, and ordered that the appraisal be stricken from her personnel file.[3] Grosz. Decl. ¶ 14 and Exs. 11–14. However, after the merger between Boeing and MDC, this performance appraisal factored into Ms. Grosz receiving a low totem ranking in her department.[4] Grosz. Decl. ¶ 19. Specifically, when she asked her new manager, Scott Littleworth, why she had received a low totem ranking, Mr. Littleworth identified Mr. Abboud's 1997 performance review as a factor. Grosz. Decl. ¶ 19 and Ex. 18. Boeing did not revisit this totem ranking, nor did it attempt to reevaluate Ms. Grosz in comparison to the other employees in her department.

On or around March 1, 1999, Ms. Grosz was transferred to the Interiors Group, also known as the Main Cabin Integration Team (here, "Interiors"). Tr. II 303:19–304:22. By transferring to Interiors, she was able to continue working at Boeing while other employees were being laid off. She worked in this group for slightly over two years until she was selected for layoff in April of 2001. During her time in Interiors, one male electrical engineer retired from the group, and another male electrical engineer was laid off from the group. Tr. II 308:17–319:3. By the beginning of January 2000, only two electrical engineers remained in Interiors—Ms. Grosz and a male, Quang Nguyen. Tr. IV 277:23–278:8. At that time, Mr. Fox became the new manager of the Interiors Group and Ms. Grosz's second-level supervisor. Fox Decl. ¶ 3.

Mr. Nguyen was classified as an Engineer Scientist, one level below Ms. Grosz's position as an Engineer Scientist Specialist. Grosz Decl. ¶ 26. His pay was significantly lower than Ms. Grosz's, and he lacked experience and knowledge of basic

---

2. Ms. Grosz's deposition is cited based on the volume of the deposition. The two volumes of her deposition taken in *Beck v. The Boeing Co.,* are cited as "Tr. I or Tr. II [page]:[lines(s)]." The two volumes of Ms. Grosz's deposition taken in this case are cited as Tr. III or Tr. IV in the same manner. Exhibits to Ms. Grosz's deposition are cited as "Tr. [volume # ] Ex. [number]."

3. Mr. Abboud issued two more performance appraisals of Ms. Grosz while he was her supervisor, both of which were favorable. Grosz. Decl. Exs. 15–16.

4. Boeing had a practice of ranking employees in particular departments prior to potential layoffs. This ranking process was called the "totem process," and the ranking an individual received was her "totem ranking."

engineering practices. Grosz Decl. ¶ 26 and Ex. 20. Nonetheless, Mr. Nguyen was placed in a position of authority over Ms. Grosz, as he was allowed to choose which tasks he would do and which he would assign to Ms. Grosz. Grosz Decl. ¶ 28. Ms. Grosz made several complaints about this arrangement to Mr. Fox, but the arrangement persisted during her employ in Interiors. Grosz Decl. Exs. 22, 23, 24, 26.

While she worked in Interiors, Ms. Grosz was denied important training and certification opportunities made available to male employees. For example, Ms. Grosz sought to obtain Design Approval Engineer ("DAE") certification. This certification would give her more authority in the company, and would empower her to sign off on certain aspects of electrical engineering drawings. Grosz Decl. Ex. 27. Initially, Mr. Fox declined to inform Ms. Grosz of this program, while simultaneously making the information and training available to Mr. Nguyen in June 1999. Grosz Decl. Ex. 29. Ms. Grosz repeatedly complained about this disparate treatment, and was ultimately able to receive the training in June 2000. Grosz Decl. Exs. 30, 31, 32. However, in order to obtain certification, Mr. Fox needed to fill out a request memorandum. Grosz Decl. Ex. 33. Mr. Fox never submitted one of these memoranda, and never explained his failure to do so to Ms. Grosz. Grosz Decl. Ex. 33. Ms. Grosz never obtained DAE certification. Her last recorded complaint about her employment in Interiors under Mr. Fox was in regard to this certification issue, and was filed in July 2000. *Id.*

In early 2001, Mr. Fox was informed that he needed to layoff approximately seven of the thirty employees in the Interiors Group. Fox Decl. ¶ 4. Mr. Fox was instructed that the employees to be retained should be those who had the best skills to complete the remaining work of the Interiors Group. Fox Decl. ¶ 4. Mr. Fox noted that the electrical design work in the Interiors Group had been essentially completed by early 2001, and that there was no need for electrical engineers in the department on a full-time basis. Fox Decl. ¶ 5. Mr. Fox selected both Ms. Grosz and Mr. Nguyen, the department's only electrical engineers, for termination. Fox Decl. ¶ 7. Ms. Grosz was informed of this decision in April 2001, and on June 15, 2001, Ms. Grosz was laid off from Boeing. Fox Decl. ¶ 8; Grosz Decl. Ex. 33A. Her salary at the time of her termination was $54,000/year. Reynolds Decl. Ex. A.

## C. MS. GROSZ'S CLAIMS IN THIS ACTION

Ms. Grosz has three remaining claims in this action, all of which are at issue in Boeing's motion for summary judgment.[5] First, Ms. Grosz claims that Boeing engaged in gender discrimination when it selected her for layoff. Second, she claims that Boeing selected her for layoff as retaliation for her repeated complaints of gender discrimination at work. Finally, Ms. Grosz contends that she was discriminated against on account of her gender by receiving less pay than male workers at Boeing. Ms. Grosz claims that all these actions violate Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act ("FEHA").

## III. LEGAL ANALYSIS

Summary judgment is proper if the materials before the court "show that there is

---

**5.** Ms. Grosz's First Amended Complaint initially pled more causes of action. However, by stipulation on July 27, 2006, Ms. Grosz dismissed these other claims and elected to proceed only on the three claims at issue in this motion.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating that there are no genuine material issues, and that it is entitled to judgment as a matter of law. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

## A. GENDER DISCRIMINATION

 In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the three-step burden shifting test for analyzing discrimination claims.[6] The plaintiff first has the burden of establishing a *prima facie* case of discrimination. *Green,* 411 U.S. at 802, 93 S.Ct. 1817. The defendant then has the burden to articulate some legitimate, non-discriminatory reason for the plaintiff's termination. *Id.* The employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant carries that burden, the presumption of discrimination disappears, and the plaintiff must demonstrate that the legitimate reason offered by the defendant was a mere pretext for discrimination. *Green,* 411 U.S. at 805, 93 S.Ct. 1817. She can show pretext either by persuading the court that a discriminatory reason was the more likely motivating factor behind her termination, or by showing that the employer's proffered explanation is unworthy of credence. *Id.* at 804–05, 93 S.Ct. 1817.

 To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must provide evidence that "give[s] rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Since she presents no direct evidence of discrimination, Ms. Grosz must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably. *See Leong v. Potter,* 347 F.3d 1117, 1124 (9th Cir.2003). At the summary judgment stage, the "requisite degree of proof necessary to establish a *prima facie* case ... is minimal and does not even need to rise to

---

6. Because California law under FEHA mirrors federal law under Title VII, federal cases are instructive and the claims may be similarly analyzed. *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996); *Mendoza v. Town of Ross,* 128 Cal.App.4th 625, 635, 27 Cal.Rptr.3d 452 (2005).

the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). However, a plaintiff's failure to offer evidence establishing a necessary element of her *prima facie* case will ordinarily be fatal to her claim. *Lyons v. England,* 307 F.3d 1092, 1113 (9th Cir.2002). Ms. Grosz fails to satisfy the fourth element because she cannot show any similarly situated employee who received more favorable treatment, and this failure is fatal to her claim.

 For another employee to be similarly situated, the other employee's job must be similar to the plaintiff's "in all material respects." *Moran v. Selig,* 447 F.3d 748, 755 (9th Cir.2006). This test does not require that the jobs be identical, but they must be similar in all relevant respects. *LaCroix v. Sears, Roebuck, & Co.,* 240 F.3d 688, 694 (8th Cir.2001). Boeing satisfied its burden on summary judgment by pointing out that there was no evidence demonstrating that a similarly situated employee was treated more favorably. It is undisputed that Mr. Nguyen, the only other electrical engineer working in Interiors with Ms. Grosz, was laid off with her in June of 2001. Fox Decl. ¶¶ 7, 10. Since Boeing carried this burden, Ms. Grosz must articulate specific facts showing that there were other employees who were similarly situated and treated more favorably. Ms. Grosz fails to make this showing, and thus fails to prove a *prima facie* case of discrimination.

Ms. Grosz alleges that there were five similarly situated employees at Boeing who were treated more favorably: George Bouiez, Victor Khatchadourian, Michael Sarkis, Larry Tanabe, and Juan Jimenez. However, Ms. Grosz offers no meaningful evidence with which a fact finder could compare Ms. Grosz's job with the jobs of these men to determine if they were materially similar. The main piece of evidence

Ms. Grosz presents is that they were all members of the work group "1X." She supplements this with an allegation that, at the time they were hired, Mr. Bouiez, Mr. Khatchadourian, and Mr. Sarkis were performing the same work as she was. Grosz Decl. ¶ 5; Opp'n 14:25–27. This is simply insufficient evidence to show that these five employees had jobs that were similar to Ms. Grosz's in all material respects at the time she was laid off.

While certain of these men may have been performing the same work as Ms. Grosz in 1997, there is no evidence that their work was still the same in 2001. In fact, the undisputed evidence in the record is that in April of 2001, Mr. Bouiez worked for the Customer Support Group of Boeing's Commercial Airline Services Division. Grosz Decl. Ex. 4. This is an entirely different business unit within the Long Beach facility. Mr. Sarkis and Mr. Khatchadourian worked for Integrated Defense Systems ("IDS"), part of Boeing's military division that operates in Anaheim. Grosz Decl. Exs. 5, 6. IDS is a different business unit performing a different function at a different facility altogether. Also, as employees of IDS, Mr. Sarkis and Mr. Khatchadourian were not members of the SCPEA. Reynolds Supp. Decl. ¶¶ 5, 7. As to Mr. Tanabe and Mr. Jimenez, both men were mechanical engineers (unlike Ms. Grosz, who was an electrical engineer) who worked in a different business unit at the Long Beach facility. Grosz Decl. Exs. 36, 37.

Ms. Grosz provides no evidence to show that, despite their location in different business units, these men were in fact performing materially similar jobs. She provides no evidence of the job duties, responsibilities, or of the type of engineering work being done. Without such evidence, no reasonable trier of fact could conclude that she was similarly situated to

any of these five employees in all material respects. As such, she failed to make a *prima facie* case of discrimination, and Boeing is entitled to summary judgment on this claim.

■ Even if Ms. Grosz had established a *prima facie* case of gender discrimination, Boeing provided a legitimate, non-discriminatory reason for her layoff; namely, a reduction in force that claimed 7 of the 30 people in her group. *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir.2002) (finding that a reduction in force is a legitimate, non-discriminatory reason for terminating an employee). As noted above, Ms. Grosz's layoff took place while Boeing was in the process of eliminating nearly 9,000 jobs at the Long Beach facility. Boeing also indicated that Ms. Grosz was selected for layoff because there was no remaining electrical engineering work to be performed in Interiors. Fox Decl. ¶ 5. Ms. Grosz herself testified that immediately prior to being selected for termination, she was no longer performing electrical engineering work. Tr. IV 284:1–285:2. Ms. Grosz also admitted that at the time she was notified of her layoff, her manager told her that she was selected because "the electrical work is finished." *Id.* It is undisputed that the only electrical engineers who worked in Interiors were both laid off. Fox Decl. ¶ 6.

■ In order to prove discrimination in light of this legitimate, non-discriminatory explanation, Ms. Grosz must provide specific and substantial evidence that Boeing's stated reasons were pretext for discrimina-tion. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089 (1981); *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir.2004) (holding that evidence of pretext "must be 'specific' and 'substantial'" to create a triable issue of fact); *Wallis*, 26 F.3d at 890 ("plaintiff must produce 'specific, substantial evidence of pretext'"). A showing of pretext is more difficult to make in the context of a layoff where an employee's position is com-pletely eliminated. *See Sengupta v. Mor-rison–Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir.1986) (plaintiff's case "crumbles" unless she can "'demonstrat[e] a continued need for the same services and skills'") (*quoting Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir.1979)).

■ Ms. Grosz cannot carry her bur-den of demonstrating pretext. She failed to provide specific and substantial evidence showing that there was a continuing need for electrical engineering work in her de-partment. It is not enough for her to demonstrate that she was capable of per-forming other jobs at Boeing.[7] Ms. Grosz must demonstrate that her prior job duties were still being performed after her layoff, and she has not provided sufficient evi-dence to allow a reasonable finder of fact to reach that conclusion. No electrical engineers transferred into or were other-wise added to Interiors after Grosz's selec-tion for layoff or her actual layoff. Fox Decl. ¶ 11; Tr. IV 307:4–308:21. Nor was there any further electrical design work performed in that department. Simply put, her job was no longer being per-formed at Boeing.

---

7. Ms. Grosz's own subjective belief that she was more qualified than other engineers out-side Interiors is not relevant. Ms. Grosz's qualifications were evaluated against the cri-teria to do the remaining work in Interiors, which did not include electrical design. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir.2000) ("The question is not whether [the employee] in the abstract had better qualifications than the other candi-dates. The question is whether the other can-didates are more qualified with respect to the criteria that [the employer] actually em-ploys.").

Ms. Grosz also argues that the history of discrimination she suffered at Boeing demonstrates that the decision to terminate her was pretextual. However, plaintiffs cannot recover under Title VII "on the theory that past acts of discrimination ... constitute a current violation simply because they continue to have present effect." *Lyons*, 307 F.3d at 1111–12. "A discriminatory act which is not made the basis for a timely charge is the legal equivalent or a discriminatory act which occurred before the statute was passed.... [S]eparately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

At the time *Evans* was decided, Title VII carried a 90 day statute of limitations. *Evans*, 431 U.S. at 556, 97 S.Ct. 1885. That statute of limitations has now been extended to 300 days. *See* 42 U.S.C. § 2000e–5(e)(1). Any discrete employment act that occurs outside the limitations period is time-barred, and cannot form the basis for a discrimination claim. Ms. Grosz filed her first Equal Employment Opportunity Commission ("EEOC") charge on March 10, 2000.[8] Tr. II 368:25–369:5, Ex. 8. Any act that occurred over 300 days earlier (prior to May 15, 1999) is thus time-barred.[9] Among the time-barred acts in this case are the performance review from Mr. Abboud, her low totem ranking, and her transfer to Interiors. Ms. Grosz cannot argue that the present effects of such time-barred dis-

criminatory acts make the decision to terminate her discriminatory.

In *Evans*, Ms. Evans, a flight attendant, was forced to resign in 1968 due to United Air Lines' ("United") policy prohibiting married flight attendants. *Id.* at 554, 97 S.Ct. 1885. After United's policy was found to be illegal in 1971, Ms. Evans was rehired in 1972. *Id.* However, she was denied seniority credit for her prior service. *Id.* She sued, claiming that since United's discriminatory policy was the only reason she resigned, United should not be able rely on a prior act of discrimination to deny her seniority. *Id.* The Court agreed that "the seniority system [gave] present effect to a past act of discrimination." *Id.* at 558, 97 S.Ct. 1885. However, the Court held that because Ms. Evans failed to file a timely charge of discrimination regarding her resignation, "United was entitled to treat that past act as lawful" for its subsequent personnel decisions. *Id.* The denial of seniority was not independently discriminatory because it was based on a neutral policy motivated by legitimate business reasons. *Id.*

The facts of *Evans* are analogous to arguments advanced by Ms. Grosz in this case. She claims that a direct line can be drawn from the allegedly discriminatory performance review by Mr. Abboud to her ultimate discharge. Specifically, she asserts that the performance review led to her low totem ranking, leading directly to her transfer to Interiors (which she describes as a "dying group" even in 1999), and thus leading to what she views as an inevitable layoff. Simply put, she argues

---

8. *Ms. Grosz also filed timely administrative charges with respect to her termination on January 23, 2002. Tr. III 221:5–20, Ex. 13.*

9. The statute of limitations under FEHA is one year, slightly longer than the Title VII limitations period. *See* CAL. GOV'T CODE § 12960(d). Though there is some dispute

between the parties over whether Ms. Grosz's 2000 EEOC charge was cross-filed with the California Department of Fair Employment and Housing, the Court assumes for purposes of this motion that it was. Any act occurring prior to March 10, 1999 is time-barred under FEHA.

the only reason she was in a position to be laid off was because of Mr. Abboud's prior discriminatory conduct. However, Mr. Abboud's performance review occurred long before May 15, 1999, the start of the actionable time period in this case. Even if Ms. Grosz's allegations are true, and the performance review and its use in her totem ranking sealed her fate at Boeing, she cannot recover for the later effects of discriminatory acts occurring prior to the actionable time period. Ms. Grosz was terminated during a reduction in force, neutrally applied by Boeing to address its legitimate economic concerns. She introduced no evidence to show how Mr. Abboud's prior alleged discriminatory conduct made Mr. Fox's decision to lay her off independently discriminatory. The alleged discrimination involved in the performance review and totem ranking simply does not support Ms. Grosz's claim that Mr. Fox selected her for layoff because of her gender. *See, e.g., Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir.2005) (affirming summary judgment for employer in gender discrimination claim; foreman's biased comments are not sufficient to raise an inference of discriminatory animus where they were not involved in the employment decision).

Finally, Ms. Grosz contends that by failing to compare her to all other employees in the "1X" work group, Boeing and Senior Manager of Human Resources Michael Reynolds violated the SCPEA Agreement. She alleges that violation of the SCPEA Agreement automatically constitutes pretext. However, Ms. Grosz misreads the language of the SCPEA Agreement and fails to recognize the discretion it gives Boeing to select comparators when it conducts a layoff.

Whenever Boeing conducts a layoff, it identifies a work group from which employees will be released. Article VII of

the SCPEA Agreement notes that employees represented by the SCPEA are divided into work groups "as *defined by the company*" in Appendix A–1. SCPEA Agreement, Art. VII, § 1(b)(2), Reynolds Decl. Ex. B (emphasis added). The Appendix defines work group as including "those employees assigned to a technology, function, department, or location, *or* as identified by the employee's group code." SCPEA Agreement, App. A–1 (emphasis added). This language clearly indicates that Boeing has the authority to select and define the relevant group from which employees will be laid off. It may use the employee group codes to define the group, but it may also use other criteria, and use of other criteria does not violate the SCPEA Agreement. This is particularly true here, where there is no evidence in the record indicating that Boeing initiated this reduction in force to lower its overall number of "1X" employees. Instead, the undisputed evidence is that Boeing instructed Mr. Fox to remove employees with various duties from Interiors. Consistent with the SCPEA Agreement, Boeing identified the group from which employees would be laid off, compared the employees in that group with one another, and made layoffs accordingly. Fox Decl. ¶ 7. Ms. Grosz has introduced no evidence to suggest this process was pretextual. Because Ms. Grosz has not provided specific and substantial evidence of pretext, her discrimination claim must fail.

### B. RETALIATION

■■■■■ To establish a *prima facie* retaliation claim under Title VII, Ms. Grosz must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and Boeing's action. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir.2000); *Akers v. County of*

*San Diego,* 95 Cal.App.4th 1441, 1453, 116 Cal.Rptr.2d 602 (2002). Here, Ms. Grosz failed to demonstrate a causal link between her protected activity and her termination. Ms. Grosz provided evidence of the various complaints of discrimination she brought to Mr. Fox throughout her time in Interiors. According to this evidence, the last of these complaints was brought in June 2000. Her first EEOC charge alleging discrimination was filed in March 2000. Ms. Grosz also alleges that she was subject to discriminatory treatment during her tenure in Interiors in retaliation for her repeated complaints. This treatment includes being placed below an inferior employee and being denied training and certification. These adverse acts also all took place in 2000.

██ Lack of temporal proximity makes it more difficult to prove causation. *Porter v. Cal. Dep't of Corrections,* 419 F.3d 885, 895 (9th Cir.2005). Here, where at least 10 months separated her termination from her protected activity, temporal proximity alone is insufficient to prove a causal connection between the two. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) *(per curiam )* (finding 3 months separation between protected conduct and transfer insufficient to support a finding of causation on temporal proximity alone); *Manatt v. Bank of Am., NA,* 339 F.3d 792, 802 (9th Cir.2003) (no retaliation inferred when approximately nine months between the date of complaint and adverse action); *Vasquez v. County of L.A.,* 349 F.3d 634, 646 (9th Cir.2003) (13–month gap is too long).

Ms. Grosz has not presented enough evidence to show that, despite a 10 month gap, her protected activity and her ultimate termination were causally related. The fact that she filed several complaints and then was ultimately fired is not sufficient. *See Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 n. 3 (5th Cir.1997) ("If timing *alone* were enough [to show causation], any action taken against [the plaintiff], no matter how justified, could be sustained as discriminatory.") (emphasis in original). She cannot prove causation simply by saying that since her termination happened after her complaints, it must have been related to her complaints. *See Chen v. County of Orange,* 96 Cal.App.4th 926, 931, 116 Cal.Rptr.2d 786 (2002) Ms. Grosz is not entitled to use the fact of her complaints as a shield from legitimate employment decisions. Boeing laid off thousands of workers while Ms. Grosz was employed in Interiors. Reynolds Decl. ¶ 5. She was retained in her position in 2000 when Boeing selected another male electrical engineer from Interiors for termination. Tr. II 301:23–304:22, 306:23–307:6, 344:25–345:6; Tr. IV 255:11–17; Reynolds Decl. ¶ 15. She was laid off only when the electrical design work of her group had been completed, and the group no longer had need of her skills. Fox Decl. ¶ 6.

In light of the undisputed evidence of financial hardship at Boeing and lack of work in the Interiors Group, Ms. Grosz simply has not presented sufficient evidence from which a trier of fact could find a causal connection between her complaints and her termination. As such, Ms. Grosz has not demonstrated a *prima facie* case of retaliation.[10] Boeing is granted summary judgment on her retaliation claims.

---

**10.** Even if her *prima facie* case was sufficient, Ms. Grosz's retaliation claim suffers the same defect as her discrimination claim because she has not provided enough evidence to demonstrate that Boeing's legitimate reasons for terminating her job were pretextual. *See Hardage v. CBS Broad., Inc.,* 427 F.3d 1177, 1188 (9th Cir.2005) (even assuming causa-

## C. DISCRIMINATORY PAY

Ms. Grosz has also failed to provide sufficient evidence to make a claim for discriminatory pay. Since Ms. Grosz is proceeding under Title VII and FEHA, and not the Equal Pay Act, her discriminatory pay claim is bound by the limitations periods of those statutes. Thus, the actionable period for her Title VII claim begins on May 15, 1999, and on March 10, 1999, for her FEHA pay claim. To prove her discriminatory pay claim, she must show that, within the actionable time period, she received materially less compensation than other similarly situated employees on account of her gender. The standard for demonstrating that another employee is similarly situated is higher in the equal pay context: the jobs must require equal skill, effort, and responsibility and must be performed under similar conditions. *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir.1988) (Title VII pay discrimination claim failed where alleged comparator job required different skills because plaintiff could not prove substantial equality).[11]

Ms. Grosz has provided no evidence that would allow a reasonable juror to conclude that her work at Boeing during the actionable time period carried equal skill, effort, and responsibility as those of her comparators (Mr. Bouiez, Mr. Khatchadourian, and Mr. Sarkis), or that it was carried out under similar conditions. As noted above, during the applicable time period between May 15, 1999 (or March 10, 1999 for the FEHA claim) and her layoff in June 2001, none of the alleged comparators even worked in the same business unit as Ms. Grosz, and two were not Union members and thus not subject to the pay scale provided by the SCPEA Agreement. In light of this evidence, Ms. Grosz cannot make a claim for discriminatory pay, and Boeing is entitled to summary judgment.

## IV. CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED that Defendant Boeing's motion for summary judgment against Ms. Grosz is GRANTED as to all remaining claims. Defendants are entitled to recover their costs in accordance with a properly submitted Bill of Costs.

---

tion, summary judgment for employer granted where plaintiff failed to rebut the legitimate reason for giving adverse performance review), *op. amended on denial of reh'g and reh'g en banc*, 433 F.3d 672 (2006) and 436 F.3d 1050 (2006).

11. In the Ninth Circuit, "[e]qual pay claims asserted under Title VII must satisfy the same substantial equality test applied to claims asserted under the EPA." *Forsberg*, 840 F.2d at 1418 (citing *Gunther v. County of Wash.*, 623 F.2d 1303, 1313 (9th Cir.1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)); see also *Foster v. Arcata Assocs.*, 772 F.2d 1453, 1465 (9th Cir.1985).