**Wilfred Joseph FIELDS, Sr.,**
**Plaintiff–Appellant,**

v.

**RIVERSIDE CEMENT COMPANY, e/s/a TXI Riverside Cement Co.; Paper Allied Industrial Chemical & Energy Workers, Local 80192, Defendants–Appellees.**

**No. 05–55063.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2007.

Filed March 27, 2007.

---

* The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Hodge, Victorville, CA, for Plaintiff–Appellant.

Kirsten C. Love, Esq., Michael R. Goldstein, Esq., Musick Peeler & Garrett, Los Angeles, CA, Glenn Rothner, Esq., Rothner, Segall & Greenstone, Pasadena, CA, for Defendants–Appellees.

Before: PREGERSON, W. FLETCHER, and BERZON, Circuit Judges.

MEMORANDUM *

Wilfred Fields appeals the district court's grant of summary judgment for Riverside Cement Company ("RCC") and Paper Allied Industrial Chemical & Energy Workers, Local 80192 ("Union")[1] on all claims. Reviewing the district court's decision de novo, *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc), we reverse as to Fields's race discrimination, retaliation, and wrongful discharge claims against RCC, and affirm as to all other claims.[2]

**1. Title VII Race Discrimination Claim Against RCC**

We reverse the district court on Fields's claim against RCC for racial discrimina-

Stanley W. Hodge, Esq., Arshak Bartoumian, Esq., Law Offices of Stanley W.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The Union identifies itself as "Paper, Allied Industrial, Chemical & Energy Workers, Local 8–192." For clarity, however, we refer to the Union as Fields named it in his complaint and as the district court referred to it in the summary judgment orders that are the basis for this appeal.

2. We affirm the district court's determination that EEOC reasonable cause determination letters alone are insufficient to defeat summary judgment. *See Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir.2005). The probative value of such letters is especially limited where, as here, their contents are conclusory and do not detail the basis for the EEOC's finding. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir.2000).

tion under 42 U.S.C. § 2000e–2(a)(1). Fields has adduced sufficient evidence to create a triable issue of fact regarding RCC's dissimilar treatment of similarly situated non-black employees, the only element of his prima facie case RCC challenged. *See Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir.2004) (reciting *McDonnell Douglas* burden shifting test and noting that plaintiffs need provide "very little" evidence to establish a prima facie case of discrimination at summary judgment).

■ Fields submitted evidence that, if credited, establishes that RCC did not treat Chenard and Fields similarly when investigating serious accusations leveled against each of them, or in meting out punishment. *See Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir.2004) (as amended) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.").

When Fionda complained about her confrontation with Fields, Phillips conducted a cursory, one-sided investigation before suspending Fields. Although Phillips immediately spoke with Fionda about the incident, there is no evidence that anyone interviewed Fields to get his side of the story. Moreover, Phillips did not interview either Nipper or Puckett, both of whom Phillips could have reasonably expected to have information about the altercation given Phillips's inquiry about possible surveillance footage. Based on this limited investigation, which ultimately relied solely on Fionda's rendition of events, Phillips suspended Fields and took away his lead man role.

Conversely, RCC carefully investigated when Fields accused Chenard of various breaches of plant rules, such as failing to wear safety glasses and taking excessive breaks. In response to each of Fields's accusations, supervisors promptly took

steps to determine if Chenard had violated the rules, and either determined that Fields's complaints were unfounded or subjected Chenard to discipline short of suspension.

Unlike when Fionda accused Fields of confronting her and calling her a racist, however, when Fields complained that Chenard had made a death threat, RCC did not respond by immediately disciplining Chenard. Fields testified in his deposition that he first reported the threat to supervisors in May 2000. RCC waited over four months to conduct *any* investigation. When Phillips did look into the death threat allegation, he did not speak with Fields about it, or about the truth of accusations Savedra and Sylvia had made against Fields. Rather, Phillips immediately suspended Fields pending an investigation, even though it was Chenard who had been accused of making a death threat. Only *after* suspending Fields did Phillips interview Chenard and the lab technicians. On the basis of this much more thorough investigation, Phillips cleared Chenard of misconduct and recommended Fields be terminated, which he was.

In sum, RCC relied exclusively on the accounts of non-black employees when they made accusations against Fields, performing next to no investigation to confirm those accounts and failing to even ask Fields his side of the story before suspending, demoting and terminating him. When Fields accused Chenard of violating plant rules, RCC carefully investigated Chenard's behavior and either cleared him or lightly disciplined him. But when Fields reported that Chenard had made a death threat, RCC discounted the accusation and suspended Fields while Phillips performed a thorough investigation that cleared Chenard and culminated in Fields's termination. This evidence of dif-

ferential treatment of similarly situated workers is sufficient to meet Fields's prima facie burden at summary judgment. *See Peterson,* 358 F.3d at 603.

■ Fields has also adduced evidence that RCC's proffered non-discriminatory reason for its actions, enforcing plant rules, was pretextual. The evidence showing that RCC treated similarly situated non-black employees more favorably than black employees is itself probative of a discriminatory motive. *See Vasquez,* 349 F.3d at 641; *Gerdom v. Cont'l Airlines, Inc.,* 692 F.2d 602, 609 (9th Cir.1982) (en banc). This evidence is bolstered by Fields's deposition testimony that Phillips twice poked him in the chest and called him "boy." [3]

In addition, Fionda, an Administrative Supervisor, responded to Fields's complaints of discrimination by calling him a "troublemaker" who was "always complaining about black and white things" and making "black complaints" to her. She also disparaged Fields for complaining years earlier after witnessing RCC workers dressed like the Ku Klux Klan burning a cross and chanting "KKK" while marching around the plant.[4]

This evidence could be interpreted by a jury as condoning such racially charged expression, and is probative of pretext because Fionda, while not a decisionmaker herself, precipitated the suspension, demotion, and termination decisions. *See Vasquez,* 349 F.3d at 641 (requiring evidence of a "nexus" between non-decisionmaker's comments and adverse employment action). Fionda reported the September 5, 2000 confrontation with Fields to Phillips, who then relied exclusively on her version

of events in deciding to suspend and demote Fields. The Fionda/Fields altercation also factored into RCC's decision to suspend and terminate Fields a month later. Accordingly, we conclude that Fields has raised a triable issue of fact as to his Title VII race discrimination claim against RCC.

### 2. Title VII Retaliation Claim Against RCC

We also reverse the district court's dismissal of Fields's retaliation claim against RCC. "To establish a prima facie case of retaliation, an aggrieved employee must show that (1) he has engaged in statutorily protected expression; (2) he has suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action." *EEOC v. Dinuba Med. Clinic,* 222 F.3d 580, 586 (9th Cir.2000) (internal quotation marks omitted). Once a plaintiff establishes this prima facie case, the *McDonnell Douglas* burden shifting analysis applies. *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000).

■ Fields has established a prima facie case of retaliation. Fields informed his supervisors that he was planning to file a racial harassment complaint with the California Department of Fair Employment and Housing ("DFEH") and the EEOC, which constitutes protected activity. *See EEOC v. Luce, Forward, Hamilton, & Scripps,* 303 F.3d 994, 1007 (9th Cir.2002). He also made numerous complaints to his superiors about racial harassment and discrimination, including his complaint to Fionda about the company's alleged differential treatment of collect phone calls from white and black workers.

---

**3.** While this evidence is weakened somewhat by the long span of time separating Phillips's comment from the adverse employment decisions, it retains some probative value given Phillips's direct role in investigating and pun-

ishing Fields. *Cf. Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993).

**4.** RCC conceded at oral argument that the KKK incident did, in fact, occur.

■ Fields's suspensions, demotion, and termination constitute adverse employment actions. Moreover, we may infer causation from the extremely close temporal proximity of each adverse action to Fields's complaints. *See Henderson,* 217 F.3d at 1244; *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987). Fields was suspended and demoted the same day he complained about the racist collect call policy to Fionda, and was suspended and fired two hours after he told Sylvia and Savedra that he intended to file a claim with the EEOC and the DFEH.

■ Finally, Fields has adduced sufficient evidence of pretext. Fionda's comments disparaging Fields for his repeated complaints of discrimination suggest RCC was attempting to minimize racial problems. RCC then conducted a one-sided investigation and ultimately suspended and demoted Fields based solely on Fionda's version of events. The Fionda/Fields incident also factored into RCC's later decisions to suspend and fire Fields. A reasonable jury could infer that this chain of events, triggered by Fields's complaints of racism that were met with Fionda's explicit disapproval and discouragement of such complaints, bears the mark of retaliation for protected activity rather than legitimate enforcement of plant policies. Because Fields has adduced sufficient evidence to defeat summary judgment on his retaliation claim against RCC, we reverse the district court.

### 3. Termination in Violation of Public Policy Claim Against RCC

■ We also reverse on Fields's wrongful discharge claim, as the existence of a triable issue of fact as to Fields's Title VII claims necessarily raises a triable issue as to his termination in violation of public policy claim. *See Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1287 n. 11 (9th Cir.2001).

### 4. Title VII Harassment Claim Against RCC

■ We affirm the district court on Fields's Title VII harassment claim against RCC. First, Fields's allegations regarding Chenard's harassment are not actionable under Title VII because Fields has offered no evidence that any of the acts in question were "of a racial ... nature." *Vasquez,* 349 F.3d at 642. We cannot attribute a racial motivation to Chenard's behavior based solely on Fields's opinion, or that of some fellow African–American employees, that Chenard is racist. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1408 n. 7 (10th Cir.1997); *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir.1997).

■ Second, Fields cannot base his harassment claim on evidence of a series of racist slurs and incidents occurring over the twenty years Fields worked at RCC. The vast majority allegedly occurred in the late 1980's and early 1990's, well before the time period we are allowed to consider under Title VII. *See* 42 U.S.C. § 2000e–5(e)(1). Nor may we consider this evidence under a continuing violation theory, as Fields has not produced evidence that at least one incident contributing to the claim occurred within the filing limitations period,[5] which began on June 2, 2000[6] in

---

**5.** Fields testified that two racially charged statements by Polemounter and Calloway occurred sometime in 1999 or 2000, but this evidence is too vague to definitively place the incidents within the relevant claim period.

**6.** Fields initially filed his complaint with the

this case. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Accordingly, we affirm the district court's dismissal of Fields's racial harassment claim against RCC.

## 5. Title VII Race Discrimination Claim Against the Union

█ It is unlawful under Title VII for a labor union to "exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(c)(1). Fields has failed to demonstrate that the Union's purportedly unfair handling of his arbitration[7] was "because of his race." *Id.* We therefore affirm the district court's dismissal of Fields's discrimination claim against the Union.

## 6. All Other Claims

Finally, Fields waived his § 1981 claims against both defendants, as well as his retaliation claim against the Union, by failing to raise them in his opening brief. *See Simpson,* 77 F.3d at 1176.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

DFEH, and thus § 2000e–5(e)(1)'s 300–day limitation applies.

7. Although Fields raised other bases for his discrimination claim against the Union, the only ground asserted in the opening brief in this court pertained to the Union's handling of his arbitration. Our review of the district court's decision is therefore limited to that allegation. *See Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1176 (9th Cir.1996).