# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2803

———————

Maelynn Tenge,                                    *
                                                 *
    Plaintiff - Appellant,                       *
                                                 *
v.                                               *    Appeal from the United States
                                                 *    District Court for the
Phillips Modern Ag Co; Scott Phillips,           *    Northern District of Iowa.
Individually and in his official capacity;       *
Lori Phillips, Individually,                     *
                                                 *
    Defendants - Appellees.                      *

———————

Submitted: March 14, 2006
Filed: April 28, 2006

———————

Before COLLOTON, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

Maelynn Tenge appeals from the district court's[1] grant of summary judgment to Phillips Modern Ag Company and Scott Phillips on her claims of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Iowa Civil Rights Act, and to Lori Phillips on Tenge's claim of tortious interference with a business relationship. The district court held that Tenge failed to establish a prima

———————

[1] The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

facie case of sex discrimination and ruled that Tenge had not generated a factual dispute as to whether Lori Phillips had improperly interfered with Tenge's employment. We affirm.

## I.

We state the facts in the light most favorable to Tenge. Phillips Modern Ag Company is owned and operated by Scott Phillips, whose wife Lori is also involved with the company. Tenge first began working for the company in 1993 as a secretary, but she gradually assumed more responsibility and eventually became the highest paid employee. For the entire period of her employment, Tenge was an at-will employee. As a result of her position in the company, Tenge worked closely with Scott on a regular basis. Scott said that he was always satisfied with her work performance and that she never failed to perform an assigned task. However, around 2002, Lori began to believe that Scott and Tenge were involved in a romantic relationship, and she grew concerned that Tenge was attempting to seduce Scott.

When asked during her deposition whether she had engaged in any intimate or sexual activity with Scott, Tenge admitted to two instances of touching that occurred in Lori's presence. On one occasion, Tenge and her husband were at a bar with Lori, Scott, and other co-workers. Tenge admitted that she "pinch[ed] [Scott] in the butt in fun" and that she did not care whether Lori saw it. On the second occasion, they were at a concert with their spouses, and Tenge testified that Scott "pinched me in the butt and grabbed my hand ... and just kind of like flung it, but that was just a quick instant." A few days later, Scott told Tenge that Lori was upset about them touching each other. At her deposition, Tenge agreed that this was physical contact that was suggestive and of a risqué nature, and that Lori could have suspected the two had an intimate relationship.

-2-

Tenge also testified that she wrote notes of a sexual or intimate nature to Scott some five to ten times. She stated that she put these notes in a location where other people could see them, even though she was not getting along with Lori and she knew that Lori might have the power to fire her. Indeed, Lori found one of these notes in the company dumpster, pieced it together, and reacted by terminating Tenge's employment in November 2002. Tenge admitted that if a person other than she or Scott had read the note, he or she would conclude that Tenge was interested in engaging in intimate sexual behavior with Scott. Although Scott reinstated Tenge and the two agreed that she would continue to work as an at-will employee beyond the end of the calendar year, he ultimately dismissed her on February 17, 2003. Tenge testified that Scott told her that Lori was "making me choose between my best employee or her and the kids."

Tenge filed charges of employment discrimination on the basis of sex with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission, and she received right to sue letters. She subsequently filed a complaint in the United States District Court for the Northern District of Iowa against Philips Modern, Scott, and Lori, alleging, inter alia, employment discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and the Iowa Civil Rights Act, as well as a state law claim for tortious interference with a business relationship against Lori.[2] The district court granted summary judgment in favor of Phillips Modern, Scott and Lori on these claims.

We review the district court's grant of summary judgment de novo and may affirm on any basis supported by the record. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1043 (8th Cir. 2005). Summary judgment is proper when, viewing the

---

[2] Tenge also brought a claim under the Equal Protection Clause of the federal constitution and state law claims for defamation and tortious interference with a business relationship against Scott. These claims were dismissed on her own motion in the district court.

facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c).

## II.

Tenge argues that she was terminated because she is a woman in violation of Title VII of the Civil Rights Act, which makes it unlawful for an employer to discriminate against an employee on account of that individual's sex. 42 U.S.C. § 2000e-2(a)(1).[3] An employee's Title VII claim for sex discrimination can survive summary judgment in one of two ways. First, the employee can produce direct evidence of discrimination that demonstrates "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Alternatively, an employee can use the McDonnell Douglas burden-shifting framework to establish an inference of unlawful discrimination. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005).

Tenge first argues that Scott's statement that he had to choose between his best employee and his marriage is direct evidence of sex discrimination. She claims that arousing the jealousy of the boss's wife is an illegal criterion for discharge under Title VII. Tenge admits that she engaged in sexual conduct with Scott that could have led Lori to suspect an inappropriate relationship. Thus, we are not presented with a situation where an employee has engaged in no sexually suggestive behavior, but is terminated simply because an employer or supervisor's spouse perceives the employee

---

[3] The Iowa Civil Rights Act, Iowa Code Chapter 216.6(1), has a similar provision which mirrors federal law, so our discussion of Tenge's Title VII claim applies equally to her claim under the Iowa Civil Rights Act. Montgomery v. John Deere & Co., 169 F.3d 556, 558 n.3 (8th Cir. 1999).

to be a threat. Nor does Tenge claim that the conduct arose in the context of a hostile work environment or due to unwelcome advances from Scott. As a result, this case presents the limited question of whether Title VII's prohibition on discrimination on the basis of "sex" includes a termination on the basis of an employee's admitted, consensual sexual conduct with a supervisor. Although this circuit has not yet decided a case presenting this specific legal question, for the reasons stated below, we conclude that it is not illegal under Title VII for an employer to discharge an employee on such grounds. Consequently, Scott's stated reason for terminating Tenge cannot amount to direct evidence of sex discrimination.

The word "sex" was not added to Title VII until shortly before the bill was passed, so there is "little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex'." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). However, it is clear that in enacting Title VII, Congress aimed to eliminate the entire spectrum of disparate treatment of men and women in the workplace. Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702, 707 n.13 (1978). Accordingly, in interpreting the meaning of "sex discrimination," the Supreme Court has expanded Title VII's reach beyond simply prohibiting employers from making distinctions between employees based on their gender. Meritor, 477 U.S. at 64-65. Title VII now prohibits both quid pro quo harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotations omitted). As Tenge does not raise either type of sexual harassment claim, we must consider whether Title VII is implicated when distinctions are made in the workplace based on an employee's admitted, consensual sexual conduct with a supervisor in a non-hostile working environment. There are two lines of cases relevant to this inquiry.

-5-

First, many appellate courts have addressed cases of "sexual favoritism," where one employee was treated more favorably than members of the opposite sex because of a consensual relationship with the boss. Faced with such a scenario, the Second Circuit rejected a Title VII claim brought by the disadvantaged group, holding that "[t]he proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations." DeCinto v. Westchester County Med. Ctr., 807 F.2d 304, 306 (2d Cir. 1986). The court reasoned that the male employees "were not prejudiced because of their status as males; rather, they were discriminated against because [the supervisor] preferred his paramour." Id. at 308. After this decision, other appellate courts have uniformly followed this reasoning in similar cases. See, e.g., Schobert v. Illinois Dep't of Transp., 304 F.3d 725, 733 (7th Cir. 2002) ("Whether the employer grants employment perks to an employee because she is a protege, an old friend, a close relative or a love interest, that special treatment is permissible [under Title VII] as long as it is not based on an impermissible classification"); Womack v. Runyon, 147 F.3d 1298, 1300 (11th Cir. 1998) (per curiam) ("Title VII does not encompass a claim based on favoritism shown to a supervisor's paramour"); Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1369-70 (10th Cir. 1997) (same); Becerra v. Dalton, 94 F.3d 145, 149-50 (4th Cir. 1996) (same); see generally, Merrick T. Rossein, Romantically Motivated Favoritism, Employment Discrimination Law and Litigation § 5:45 (2005); Mitchell Poole, Paramours, Promotions, and Sexual Favoritism: Unfair, but Is There Liability?, 25 Pepp. L. Rev. 819 (1998). In 1990, the Equal Employment Opportunity Commission weighed in, concluding that "[a]n isolated instance of favoritism toward a 'paramour' (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." However, the Commission was careful to distinguish cases of favoritism to an employee actually involved in a romantic relationship with a supervisor from favoritism based on coerced sexual conduct, which amounts to quid pro quo sexual harassment, and from widespread sexual favoritism in the workplace,

which may establish a hostile work environment claim. <u>EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism</u>, EEOC Notice No. 915-048 (Feb. 15, 1990).

This circuit has not squarely faced the issue of sexual favoritism, but two cases indicate our general agreement with the above reasoning. In <u>Thomson v. Olson</u>, 56 F.3d 69 (8th Cir. 1995), we summarily affirmed the dismissal of a Title VII action brought by a male employee based on the preferential treatment a female co-worker received due to a consensual romantic relationship with her supervisor. In support of the dismissal, the district court had reasoned that the prohibited differentiation under Title VII must be "based on a person's sex, not on his or her sexual affiliations." <u>Thomson v. Olson</u>, 866 F. Supp. 1267, 1271 (D.N.D. 1994). Later, in <u>Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2</u>, 197 F.3d 922, 926-27 (8th Cir. 1999), we cited <u>DeCinto</u> and <u>Taken</u> with approval in affirming the district court's holding that a discovery inquiry into the voluntary sexual relationships of the company president would be irrelevant to a sex discrimination charge brought against him. Thus, the principle that emerges from the above cases is that absent claims of coercion or widespread sexual favoritism, where an employee engages in consensual sexual conduct with a supervisor and an employment decision is based on this conduct, Title VII is not implicated because any benefits of the relationship are due to the sexual conduct, rather than the gender, of the employee.

The second line of cases is more directly analogous to the instant case and concerns situations where an employee is treated less favorably than employees of the opposite sex as a result of consensual sexual conduct. For example, in <u>Platner v. Cash & Thomas Contractors, Inc.</u>, 908 F.2d 902, 903 (11th Cir. 1990), the wife of the business owner's son became "extremely jealous" of one of the female employees, suspecting that her husband and the female employee, Platner, were having an affair. The owner of the business became aware of the conflict and terminated Platner because he "perceived this as a threat to his son's family unit," despite the fact that

Platner had been an otherwise satisfactory employee. Id. at 903-04. The Eleventh Circuit affirmed the dismissal of Platner's Title VII claim, emphasizing that "the ultimate basis for Platner's dismissal was not gender but simply favoritism for a close relative." Id. at 905. A number of federal district courts have faced similar cases and concluded that terminating an employee based on the employee's consensual sexual conduct does not violate Title VII absent allegations that the conduct stemmed from unwelcome sexual advances or a hostile work environment. See, e.g., Kahn v. Objective Solutions, Int'l, 86 F. Supp. 2d 377, 382 (S.D.N.Y. 2000) (employee who had consensual sexual relationship with her employer was fired at the insistence of his wife); Campbell v. Masten, 955 F. Supp. 526, 529 (D. Md. 1997) (employee who had consensual sexual relationship with her supervisor was fired because he saw her as a threat to his marriage); Freeman v. Continental Technical Serv., Inc., 710 F. Supp. 328, 331 (D. Ga. 1988) (employee who had consensual sexual relationship with her boss was fired when she became pregnant).

As with the sexual favoritism scenario, this circuit has not yet addressed whether Title VII prohibits the termination of an employee based on the employee's admitted consensual sexual conduct with an employer or supervisor.[4] However, in light of the above authority, we are persuaded that such action does not amount to discrimination on the basis of the employee's status as a man or a woman; rather, it is based on the employee's own actions and therefore is permissible under Title VII. The ultimate basis for Tenge's dismissal was not her sex, it was Scott's desire to allay his wife's concerns over Tenge's admitted sexual behavior with him. Tenge agreed that

---

[4] The only opinion based on somewhat analogous facts did not reach the issue. In Mercer v. City of Cedar Rapids, 308 F.3d 840 (8th Cir. 2002), a female probationary police officer was terminated after her romantic involvement with a male permanent police officer led to problems for the police department. However, Mercer made no argument that her termination amounted to direct evidence of sex discrimination, proceeding instead under the McDonnell Douglas framework. Her claim failed because of the numerous disciplinary grounds for her termination and because it was clear that she was not similarly situated to the male officer.

her sexually suggestive notes to Scott and their consensual touching could have led Lori to honestly believe that they were having an intimate relationship. In addition, Tenge admitted that her termination occurred "because of the suspicion of misconduct as opposed to because you are female." In this context, Tenge was terminated due to the consequences of her own admitted conduct with her employer, not because of her status as a woman. Thus, Scott's stated reason for Tenge's termination does not constitute direct evidence of sex discrimination.[5]

In addition to her argument that Scott's stated reason for her termination amounted to direct evidence of sex discrimination, Tenge also contends that she has made out a prima facie case of disparate treatment on the basis of sex under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). That framework requires a plaintiff to show that (1) she was a member of a protected group; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males. Turner, 421 F.3d at 694. If a plaintiff can make out a prima facie case, the employer must then articulate a legitimate nondiscriminatory reason for its actions, and then it falls to the employee to demonstrate that the reason was simply a pretext for discrimination. Id.

While the first three elements of Tenge's prima facie case are not in dispute, the parties disagree as to the fourth element, which requires evidence that Tenge and male co-workers were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." Rodgers v. U.S. Bank, NA, 417 F.3d 845, 852 (8th Cir. 2005) (quoting Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004)). Tenge argues that she was treated differently from similarly situated male employees because sexual banter between all the employees was common and no male employee

---

[5] The question is not before us of whether it would be sex discrimination if Tenge had been terminated because Lori perceived her as a threat to her marriage but there was no evidence that she had engaged in any sexually suggestive conduct.

was ever terminated due to such behavior.[6]  However, Tenge has not presented evidence of any male co-employee who wrote explicit notes to Scott or engaged in mutual consensual physical contact with Scott in Lori's presence.  Simply put, the touching and notes distinguish Tenge's actions from general sexual banter.  In addition, Tenge did not present evidence of similar sexual conduct between other employees where a female employee was discharged.  As we stated in Mercer, "It may well be that an employer who always fires the woman when two employees engage in an office romance would be guilty of gender discrimination."  308 F.3d at 845.  Nonetheless, Tenge does not contend that such a pattern exists, nor has she come forward with any other evidence of discrimination against female employees in the workplace.  Because she fails to make out a prima facie case of sex discrimination, we affirm the district court's grant of summary judgment on the sex discrimination claims.

## III.

Tenge also appeals the district court's grant of summary judgment in favor of Lori on her claim for tortious interference with a business relationship.  Iowa law "imposes tort liability on a person who intentionally and improperly interferes with the performance of a contract between another and a third person."  Condon Auto Sales & Serv., Inc. v. Crick, 604 N.W.2d 587, 601 (Iowa 1999).  If the contract at issue is an at-will contract, Iowa courts require "substantial evidence that the defendant's predominate or sole motive of the interference was to damage the plaintiff."  Id.  Tenge contends that she has met this standard, pointing to Lori's testimony at her deposition that she wrote an angry letter to Tenge and urged Scott to fire her because, as Lori said, "I wanted her to feel the way - I wanted her to be able to sympathize and relate to my feelings of how I was hurt."  However, Tenge admitted

_____

[6] Tenge stated in her deposition, "Jay wasn't fired because he pulled his pants down in a bin in front of the guys.  None of the guys were fired because they went to strip clubs while they were out on the road.  Nobody was fired for the comments that were made on a continuous basis out there, the banter continuously."

that Lori's discovery of one of her notes and her own behavior with Scott in Lori's presence contributed to her termination.  Tenge also agreed in her deposition that Lori may have honestly believed that she and Scott were having an intimate relationship and that her conduct could have led to that impression.  Therefore, even at this stage in the proceedings, Tenge's own testimony undermines the proposition that Lori's "predominate or sole motive" in terminating Tenge's employment was to damage Tenge, rather than to preserve her marriage.  Consequently, the district court did not err in granting summary judgment on this claim.

For the above reasons, we affirm the judgment of the district court.

_____