Jason **NIELSEN**, Plaintiff,

v.

**TROFHOLZ TECHNOLOGIES, INC.**, a California Corporation, Andrew Parker, an individual, Brenna Pedone, an individual, Yvonne Glenn, an individual, Troy Glenn, an individual and Does 1–10, inclusive, Defendants.

**No. CIV. 2:09–960 WBS KJN.**

United States District Court, E.D. California.

Nov. 2, 2010.

Jennifer Suzanne Gregory, Mark E. Ellis, Ronald R. Poirier, Ellis, Lavoie, Poirier, Steinheimer, & McGee, LLP, Sacramento, CA, for Plaintiff.

Tory E. Griffin, Downey Brand LLP, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

WILLIAM B. SHUBB, District Judge.

Plaintiff Jason Nielsen brought this action alleging that defendants Trofholz Technologies, Inc. ("TTI"), Andrew Parker, Brenna Pedone, Yvonne Glenn, and Troy Glenn discriminated against him based on gender and disability, retaliated against him, created a hostile work environment, and wrongfully terminated him. Defendants now move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.

### I. Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party, but may not engage in credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255, 106

S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. *Evidentiary Objections*

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.2002) (citing Fed.R.Civ.P. 56(e) and *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Plaintiff has filed twenty-six evidentiary objections to evidence defendants submitted in support of their motion for summary judgment (Docket No. 47) and defendants have filed twenty-six evidentiary objections of their own. (Docket No. 60.)

"[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir.2001)). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as defendants' objections could be cured at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F.Supp.2d 1110, 1119–20 (E.D.Cal.2006).

The parties primarily target each others' statements of undisputed facts, attacking the phrasing of the statements and not the underlying evidence upon which they are made. Statements of undisputed facts are not evidence, the admissibility of which can be challenged under the Federal Rules of Evidence, but summaries of the material facts contained in the cited evidence, which the court reviews independently. *See* Local Rule 260; *see also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir.1969) (holding that objections to an affidavit submitted on a motion for summary judgment "must be precise" and "specify which parts of the ... affidavit should be stricken and why"); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10B *Federal Practice & Procedure* § 2738 (2010) ("[A] motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection."). Consequently, those objections attacking the statements of undisputed fact are not well taken and are overruled.

In the interest of brevity, as the parties are aware of the substance of their objections and the grounds asserted in support of each objection, the court will not review the substance or grounds of all the objections here. For the purposes of this motion, plaintiff's objections 14–15, 19, and 20 are sustained on hearsay grounds and objections 16–17 are sustained on personal knowledge grounds; the rest are overruled. All of defendants' objections to the evidence cited in Plaintiff's Separate Statement of Undisputed Facts are overruled.

## III. *Relevant Facts*

Plaintiff worked for TTI beginning in 2004 (Griffin Decl. Ex. D ("Yvonne Dep.") at 163:22–25), and became a program manager in 2007. (Griffin Decl. Ex. C ("Nielsen Dep.") at 24:20–22.) Defendant Andrew Parker became plaintiff's immediate supervisor in December of 2007. (Nielsen Dep. at 48:5–7.) Plaintiff first suspected that Parker was engaging in an affair with Louann Kelsheimer, another employee at TTI, in May of 2009. (*Id.* at 148:5–149:3.) Kelsheimer was a project coordinator at TTI, and did not have any of the same job responsibilities as plaintiff, nor did she report to plaintiff or Parker. (*Id.* at 152:3–4, 220:20–221:6; Griffin Decl. Ex. I ("Kelsheimer Dep.") at 10:9–12, 11:13–15, 14:14–17:23, 21:14–21, 21:24–22:2, 23:4–25:2, 42:25–43:1.) Plaintiff suspected that

Parker and Kelsheimer were involved in a romantic relationship because he observed Kelsheimer "float[ing]" around like a butterfly," Parker off-loading Kelsheimer's responsibilities onto plaintiff, and distant flirting between the two. (Nielsen Dep. at 149:16–150:2, 151:4–20.)

Plaintiff approached defendant Brenna Pedone, the manager of Human Resources, near the end of June of 2008 regarding his suspicions about the relationship. (*Id.* 159:1–5, 187:21–188:5, 224:23–225:13, 226:8–17.) Plaintiff claims that he also complained to Pedone on July 23, 2008. (*Id.* at 188:6–13, 229:19–230:21, 231:25–232:17.) After some investigation, Pedone reported the rumor to defendant Yvonne Glenn, the president of TTI, who reported it to defendant Troy Glenn, the vice president, without telling him the source of the rumor. (Griffin Decl. Ex. F ("Pedone Dep.") at 126:1–128:1, 139:22–140:5; Yvonne Dep. at 240:24–241:22, 242:2–20.) In August of 2008, without telling him the source of the rumor, Troy pulled Parker aside and told him anything happening between him and Kelsheimer had better stop. (Griffin Decl. Ex. E ("Troy Dep.") at 106:23–107:9, 107:22–108:18.)

In June or July of 2008, Kevin Hayashi, another employee at TTI, told plaintiff about and later provided him with sexually suggestive emails between Kelsheimer and Parker. (Nielsen Dep. at 188:17–189:6, 189:19–190:25.) Jon Rauer, the IT manager at TTI, confirmed the existence of the emails to plaintiff and told him they alluded to something sexual in nature, but neither he nor Hayashi reported the e-mails to TTI management. (Griffin Decl. Ex. H ("Rauer Dep.") at 8:16–17, 16:22–17:7, 17:25–18:23.)

In July of 2008, plaintiff and Parker had a brief conversation during a car ride. (Nielsen Dep. at 163:10–164:7, 164:19–22, 165:20–166:6, 167:18–25.) They were dis-cussing business contracts and accounts when Parker told plaintiff he needed to "get in line" and "quit causing ripples." (*Id.*) Plaintiff believed Parker was referring to plaintiff's report of the alleged relationship between Parker and Kelsheimer because of Parker's "tone" and "body language." (*Id.*) Parker denies having any knowledge that plaintiff told anyone at TTI about his alleged relationship with Kelsheimer until sometime after October 7, 2008. (Griffin Decl. Ex. G ("Parker Dep.") at 203:5–21, 210:23–211:6.)

Plaintiff alleges that Parker required him to create agendas for weekly division meetings and perform other administrative tasks not part of his job description beginning in January or February of 2008. (Nielsen Dep. at 152:17–25, 153:6–8, 153:14–154:5.) Plaintiff also alleges that Parker attempted to make him and other employees conduct product pricing, something that was not within their job responsibilities, in March through June of 2008, but that they fought back and Parker required Kelsheimer to do it instead. (*Id.* at 154:17–155:17, 158:14–18.) Plaintiff asserts that after June 2008, the only tasks Parker off-loaded from Kelsheimer to him were minimal. (*Id.* at 158:14–18.) Plaintiff is not aware of any job benefits that Kelsheimer received that he or anyone else did not. (*Id.* at 220:8–13, 221:4–222:4.) Plaintiff was aware of one other interoffice relationship but admits that there was nothing about that relationship that impacted his work environment. (*Id.* at 248:14–249:5.) He also believes that another employee, Lisa Salcedo, received employment benefits such as extra vacation days as a result of a relationship with a supervisor. (*Id.* at 253:23–255:2.) Plaintiff also admits that he was not denied any employment opportunities within TTI that were given to an employee who submitted to sexual advances. (*Id.* at 256:6–10.)

In 2008, TTI's contract with one of its recurring clients, California National Guard ("CNG"), was set to expire, so TTI prepared a bid for a new contract. (Parker Dep. at 89:13–91:11.) Plaintiff was in charge of managing TTI's relationship with CNG, and TTI's practice was to give the lead to the program manager on any proposals related to that employee's accounts. (Nielsen Dep. at 70:1–4, 72:21–73:9.)

On May 11, 2008, plaintiff was involved in a motorcycle accident and suffered broken bones and other injuries. (Nielsen Dep. at 114:3–115:4, 115:15–17, 126:20–127:12.) Plaintiff notified Parker of his motorcycle accident by e-mail at 12:48 a.m. the morning of May 12, 2008, and then notified Troy by e-mail at 8:09 a.m. (Nielsen Dep. at 115:24–116:15, 117:16–118:13, 119:1–16.) In his email to Troy, plaintiff stated, "[T]his will cause slight modification of how we run the proposal for CNG." (*Id.* Ex. 6.) Plaintiff remembers a conversation with Troy where Troy "allud[ed]" to the possibility of someone other than plaintiff taking the lead on the CNG proposal, but based on Troy's "body language and tone," plaintiff believed that his job would be in jeopardy if he did not take the lead. (*Id.* at 121:10–122:18.)

The only accommodation requested by plaintiff as a result of his injuries was voice recognition software, which he received. (*Id.* at 123:7–18, 124:17–22; Parker Dep. at 99:4–100:2; Pedone Dep. at 109:16–23, 110:21–25.) Yvonne also brought a digital voice recorder to plaintiff's house, and various co-workers offered plaintiff rides to and from the office. (Nielsen Dep. 124:23–125:6, 127:5–12.)

About halfway through the process of preparing the CNG proposal, Troy discovered that plaintiff had reorganized the outline of the proposal contrary to earlier discussions and determined that it had to be rewritten. (Troy Dep. at 144:8–145:17.)

After TTI submitted the completed proposal, plaintiff admitted in an e-mail to the proposal team that he had "poorly lead [sic] a proposal team and it showed." (Nielsen Dep. 134:4–12, 135:11–21, Ex. 8.) TTI was ultimately awarded the CNG contract. (Parker Dep. at 101:8–10.)

On August 7, 2008, Parker placed plaintiff on an unofficial performance improvement plan ("PIP"). (Nielsen Dep. at 169:21–170:4, 172:2–11, Ex. 9.) Parker identified areas where plaintiff needed to increase his performance and effectiveness, including meeting deadlines and improving communication. (*Id.* at 172:20–173:8, Ex. 9.) On October 7, 2008, plaintiff met with Parker and Pedone to discuss his PIP. (*Id.* at 232:23–233:9.) Parker pointed out specific examples of plaintiff's deficiencies, and indicated that plaintiff was still failing through continued missed deadlines and substandard performance. (*Id.* at 233:10–234:4; Parker Dep. at 154:12–155:22, 156:11–157:12, 159:13–160:19, 164:13–165:19, 166:7–11; Pedone Dep. at 148:6–19, 149:1–150:15.) At the meeting, Pedone allegedly told plaintiff that he should be performing at a higher level based on his salary (Nielsen Dep. at 234:1–4.), and Parker allegedly asked plaintiff to resign. (*Id.* at 173:18–20.)

Immediately after that meeting, plaintiff called Yvonne and met with her. For the first time, he told her about his belief that Parker was attempting to push him out of the company because of plaintiff's disclosure of Parker's alleged relationship with Kelsheimer. (*Id.* at 235:23–237:1, 237:16–19; Yvonne Dep. at 265:1–266:8, 296:6–23.) He also informed her for the first time about his belief that Parker and Kelsheimer were exchanging inappropriate e-mails. (Nielsen Dep. at 236:12–237:1, 237:16–19; Yvonne Dep. at 265:10–266:8.)

The next day, plaintiff presented a note from his physician indicating that he re-

quired a thirty-day medical leave of absence, which was granted. (Nielsen Dep. at 237:20–25, 238:5–10.) Plaintiff requested a second thirty-day leave the next month, which was also granted. (*Id.* at 242:20–25.) Under its leave policy, TTI generally has permitted leaves of absence for personal reasons for up to thirty-days, but has not permitted employees to take off more than sixty days. (Yvonne Dep. at 92:16–93:1, 93:6–20.)

During plaintiff's leave, TTI lost its single largest professional services contract. (Pedone Dep. at 170:17–172:25; Troy Dep. at 141:12–17.) As a result, TTI was forced to terminate a number of employees and substantially reorganize its workforce. (*Id.*) TTI eliminated all division director positions as well as several business development, engineering, and other professional services staff positions, and eliminated one of five program manager positions, which was plaintiff's position. (Pedone Dep. at 170:17–172:25; Troy Dep. at 126:11–25, 154:18–22; Yvonne Dep. at 254:8–13, 254:21–255:12.)

Following his two thirty-day leaves of absence, plaintiff requested a third leave, this time for sixty additional days. (Pedone Dep. at 162:14–21; Yvonne Dep. at 271:14–20.) Plaintiff contends that this request was granted. He provides a document purporting to grant leave signed by Sharlee Davis, the human resources coordinator; defendants contend that the document was not valid because Pedone, not Davis, had the authority to grant leave. (Mem. of P. & A. in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 5, Ex. 28; *see* Pedone Dep. at 163:13–18, 165:22–166:8, 166:22–167:3.) Plaintiff also provides an "Employee Separation Report" dated December 30, 2008 (Pl.'s Opp'n

Ex. 29), which states that his employment ended by "Voluntary Resignation" because he "failed to return from leave of absence." (*Id.*) Plaintiff alleges that, regardless of the explanation given in the Employee Separation Report, he was terminated on December 30, 2008. (Pl.'s Opp'n at 5.)

On April 8, 2009, plaintiff filed this action against defendants, alleging gender discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; disability discrimination in violation of FEHA; retaliation in violation of FEHA; hostile work environment harassment in violation of FEHA; wrongful termination in violation of public policy; and sexual harassment in violation of Title VII. (Docket No. 1.) Defendants now move for summary judgment, or in the alternative partial summary judgment, pursuant to Federal Rule of Civil Procedure 56.

## IV. *Discussion*

Plaintiff's claims for discrimination, retaliation, and wrongful termination are subject to the *McDonnell Douglas* burden-shifting analysis used at summary judgment to determine whether there are triable issues of fact for resolution by a jury.[1] Under *McDonnell Douglas,*

> a plaintiff must first establish a prima facie case of discrimination [or other illegal conduct]. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination [or other illegal conduct] disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demon-

---

1. *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (discrimination); *Loggins v. Kaiser Permanente Int'l,* 151 Cal.App.4th 1102, 1108–09, 60 Cal.Rptr.3d 45 (4th Dist.2007) (retaliation and wrongful termination); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

strating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (internal citation omitted).

Because of the similarities between Title VII and FEHA, "California courts frequently seek guidance from Title VII decisions when interpreting the FEHA and its prohibitions against sexual harassment." *Lyle v. Warner Bros. Television Prods.,* 38 Cal.4th 264, 278, 42 Cal.Rptr.3d 2, 132 P.3d 211 (2006); *see Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (same regarding discrimination).

A. *FEHA Gender Discrimination Claim Against TTI*

■ FEHA makes it unlawful for "an employer, because of ... sex ... to discharge the person from employment ... or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). To make a prima facie showing of sex discrimination, a plaintiff must:

> provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz,* 24 Cal.4th at 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089. Plaintiff has failed to satisfy the third and fourth prongs of this test.

Plaintiff's theory of gender discrimination is that Parker's alleged romantic relationship with Kelsheimer resulted in Kelsheimer receiving favors not accorded to other employees and Parker passing on some of Kelsheimer's work assignments to plaintiff and other employees. The viability of this claim depends on the so-called "paramour" theory of gender discrimination. More precisely, this claim advances the theory that a supervisor's personal relationship with a co-worker coupled with favoritism can constitute discrimination.

■ Under California law, "a romantic relationship between a supervisor and an employee does not, without more, give rise to a sexual discrimination or sexual harassment claim under either the FEHA or the public policy of the state." *Proksel v. Gattis,* 41 Cal.App.4th 1626, 1631, 49 Cal. Rptr.2d 322 (4th Dist.1996). The *Proksel* court cited the Equal Employment Opportunity Commission to support its conclusion:

> Not all types of sexual favoritism violate Title VII. It is the Commission's position that Title VII does not prohibit isolated instances of preferential treatment based upon *consensual romantic relationships.* An isolated instance of favoritism toward a "paramour" (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders.

*Id.* at 1630, 49 Cal.Rptr.2d 322 (citing EEOC Notice No. 915–048 (Jan. 12, 1990)).

Federal law is also instructive. One District of Columbia Circuit decision tacitly endorsed the paramour theory of discrimination in dicta. *See King v. Palmer,* 778 F.2d 878 (D.C.Cir.1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that "unlawful sex discrimination occurs whenever sex is for no legitimate reason a substantial factor in the discrimination.") Aside from this decision, however, "every other federal court which has considered the propriety of the 'paramour' theory has rejected it

as a Title VII cause of action." *Alberto v. Bank of Am.,* No. C–94–1283, 1995 WL 562170, at *4 (N.D.Cal. Sept. 13, 1995); *see Tenge v. Phillips Modern Ag Co.,* 446 F.3d 903, 908–09 (8th Cir.2006) (termination of an employee based on the employee's consensual sexual conduct with a supervisor is not a violation of Title VII); *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 382 (5th Cir.2003); *Schobert v. Ill. Dep't of Transp.,* 304 F.3d 725, 733 (7th Cir.2002) (Title VII does not prevent employers from favoring employees because of personal relationships); *Womack v. Runyon,* 147 F.3d 1298, 1300 (11th Cir.1998); *Taken v. Okla. Corp. Comm'n,* 125 F.3d 1366, 1370 (10th Cir. 1997); *Becerra v. Dalton,* 94 F.3d 145, 149–50 (4th Cir.1996); *DeCintio v. Westchester Cnty. Med. Ctr.,* 807 F.2d 304 (2d Cir.1986). Each of these courts reasoned that "when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender." *Ackel,* 339 F.3d at 382 (citing *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 656 n. 6 (5th Cir.2002)).

■ While favoritism *with* more might constitute discrimination under the paramour theory in California, plaintiff has failed to meet his burden. The only adverse employment action he cites in support of his gender discrimination claim is that he was required to complete some of Kelsheimer's work assignments. He also stated in his deposition that he heard Troy state that he "wanted pretty women in as many positions as possible" (Nielsen Dep. at 255:10–14), but did not provide any evidence of adverse employment actions that resulted. Even assuming that being given extra work constitutes an adverse employment action, plaintiff has failed to show that he was treated disparately based on his gender. Rather, any advantages given Kelsheimer were solely based on her relationship with Parker. Plaintiff does not claim he suffered any other type of gender-based discrimination. Given these facts as well as the overwhelming weight of authority cited above, the court finds plaintiff's claim of gender discrimination under FEHA fails as a matter of law and will accordingly grant TTI's motion for summary judgment on that claim.

### B. *FEHA Disability Discrimination Claim Against TTI*

■ FEHA also prohibits discrimination based on disability. Cal. Gov't Code § 12940(a). To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) he or she suffered from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, i.e., he was a "qualified individual"; and (3) was subjected to an adverse employment action because of the disability. *Brundage v. Hahn,* 57 Cal.App.4th 228, 236, 66 Cal. Rptr.2d 830 (2d Dist.1997); *see also Green v. State of Cal.,* 42 Cal.4th 254, 262, 64 Cal.Rptr.3d 390, 165 P.3d 118 (2007) (a plaintiff bears the burden as part of a prima facie case to show he could perform "essential job duties" with or without accommodation).

■ It is undisputed that plaintiff suffered from a temporary disability. His complaints of "adverse employment action" can be split into two categories: those actions during his employment and the alleged termination. For the first category, defendants do not dispute that plaintiff was physically able to perform the essential duties of his job with or without reasonable accommodation. Instead, the issues are whether plaintiff was subjected to an adverse employment action and whether that action occurred *because of* his disability. Plaintiff's only contentions are that "Troy Glenn repeatedly attacked ... his effectiveness and work on the [CNG]

project," he was "required to work 30 days straight" without being offered a special work arrangement, he was "given conflicting instructions and directions" about the project, and Pedone "never offered [him] assistance." (Pl.'s Opp'n at 13.) Most of these claims describe a stressful work environment but have nothing to do with plaintiff's disability. *See Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 344, 77 Cal.Rptr.3d 654 (2d Dist.2008) ("The FEHA does not guarantee employees a stress-free working environment.... It is not a shield against harsh treatment at the workplace.") (internal quotation marks and citation omitted). The only allegations having anything to do with plaintiff's disability are those regarding denial of any special assistance. However, plaintiff admits that the only special accommodation he requested was a digital voice recorder, which he was given. (Nielsen Dep. at 123:7–18, 124:17–22; Parker Dep. at 99:4–100:2; Pedone Dep. at 109:16–23, 110:21–25.) Plaintiff does not claim that he was treated differently than other employees, nor does he claim that he requested accommodations that he was not given.

The other category of alleged discrimination involves plaintiff's termination. Termination is indisputably an adverse employment action. Construing the facts most favorably to plaintiff, the court assumes that TTI granted the third leave of absence but then terminated plaintiff on December 30, 2008. Thus, the court does not decide whether the third leave of absence constituted a "reasonable accommodation."

■ While the "Employee Separation Report" stating that plaintiff's employment ended by "Voluntary Resignation" because he "failed to return from leave of absence" (Pl.'s Opp'n Ex. 29) is in conflict with plaintiff's contention that he was terminated, it may be enough to satisfy the prima facie burden of showing that em-

ployment action was taken "because of" his disability. The burden then shifts to TTI, which has adequately shown a legitimate reason for denying the request. TTI lost its biggest contract during plaintiff's leave and had to undergo major reorganization, which included cutting plaintiff's position entirely. Plaintiff admitted that he poorly led the CNG proposal team, and he had been placed on a performance improvement plan to improve his work, especially regarding deadlines. TTI's financial difficulties, coupled with the documented deficiencies in plaintiff's work, provide a legitimate reason for plaintiff's termination. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1212 (9th Cir.2008) (employer must give a reason why plaintiff was included in the group that was terminated as part of workforce reduction); *see also Arteaga v. Brink's, Inc.*, 163 Cal. App.4th 327, 344, 77 Cal.Rptr.3d 654 (2d Dist.2008) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (internal quotations and citations omitted). Defendants have provided a legitimate reason for plaintiff's termination and plaintiff has provided no argument or evidence that the company's financial situation coupled with his poor performance was just a pretext to terminate him because of his disability.

Accordingly, plaintiff's claim of disability discrimination under FEHA fails as a matter of law and the court will grant TTI's motion for summary judgment on that claim.

C. *FEHA Hostile Work Environment Sexual and Disability Harassment Claim Against All Defendants and Title VII Sexual Harassment Claim Against TTI*

■ FEHA makes it illegal for an employer "because of ... physical disabili-

ty ... [or] sex ... to harass an employee ...." Cal. Gov't Code § 12940(j)(1). Similarly, Title VII prohibits sexual harassment that is so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). FEHA and Title VII require the same showing for a prima facie case:

> To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex [or disability]. There is no recovery for harassment that is occasional, isolated, sporadic, or trivial.

*Hughes v. Pair,* 46 Cal.4th 1035, 1043, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009) (internal quotation marks and citations omitted); *see Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1054–55 (9th Cir.2007) (Title VII sexual harassment). The environment must be both objectively and subjectively offensive. *Hughes,* 46 Cal.4th at 1044, 95 Cal.Rptr.3d 636, 209 P.3d 963; *see Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In addition to employers, employees are subject to personal liability for harassment under FEHA but not Title VII. Cal. Gov't Code § 12940(j)(3).

### 1. *Sexual Harassment Claims (FEHA and Title VII)*

■ Where "there is no conduct other than favoritism toward a paramour, the overwhelming weight of authority holds that no claim of sexual harassment or discrimination exists." *Proksel v. Gattis,* 41 Cal.App.4th 1626, 1630, 49 Cal.Rptr.2d 322 (4th Dist.1996); *see, e.g., Candelore v. Clark Cnty. Sanitation Dist.,* 975 F.2d 588, 590 (9th Cir.1992) ("A co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment."). "An exception to this general rule exists, however, if the workplace affair entails 'widespread' sexual conduct to which other employees are exposed, such as flagrant boasting about the relationship and/or public displays of affection." *Perron v. Sec'y, Dep't of Health & Human Servs.,* No. 2:06–cv–02429 MCE GGH, 2007 WL 4219171, at *4 (E.D.Cal. Nov. 29, 2007) (quoting *Miller v. Dep't of Corrs.,* 36 Cal.4th 446, 471, 30 Cal.Rptr.3d 797, 115 P.3d 77 (2005)). In *Miller,* the favoritism at issue included "abuse and harassment against [plaintiffs] by [a] supervisor's paramour[ ], flagrant boasting by the favored women, eyewitness accounts of public fondling, admissions by the supervisor that he could not control his paramours based on the sexual relationship between them, and repeated promotions based on sexual favors rather than on qualifications." *Alaniz v. Robert M. Peppercorn, M.D., Inc.,* No. 2:05–CV–2576 MCE DAD, 2007 WL 1299804, at *6 (E.D.Cal. May 3, 2007).

■ In contrast, plaintiff's claim of a hostile work environment is based on Parker's act of occasionally assigning Kelsheimer's work to plaintiff and Troy's alleged statement that he "wanted pretty women in as many positions as possible." (Nielsen Dep. at 255:10–14.) Beyond the emails between Parker and Kelsheimer, which were private and not meant to be viewed by plaintiff or others, the only conduct of a sexual nature plaintiff has shown is occasional flirting between Parker and Kelsheimer. Plaintiff has shown nothing that could possibly be construed as severe or pervasive. Plaintiff has also failed to provide any evidence establishing that he was harassed "because of" his gender.

Accordingly, plaintiff's claims of sexual harassment based upon a hostile work en-

vironment under Title VII and FEHA fail as a matter of law as to all defendants and the court will grant defendants' motion for summary judgment on those claims.

### 2. *Disability Harassment Claim (FEHA)*

 Harassment because of disability is subject to the same standard as sexual harassment. Plaintiff's strongest, and indeed only, contention is that he spoke to Troy after the accident and "came away with the understanding" that his job would be in jeopardy if he did not take the lead on the CNG proposal. (Pl.'s Opp'n at 11.) It is unclear how requiring plaintiff to work on a project constitutes harassment *because of* plaintiff's disability. Harassment, like discrimination, occurs only where an employee is treated differently and that difference was based on his disability. Plaintiff did not request any accommodation on the project, nor does he contend that he was unable to perform the necessary work on the project. A mere "understanding" that an employee is being told to do a job when the employer has no reason to believe the employee cannot perform the job is insufficient to show a prima facie case of harassment. *See Avila v. Continental Airlines, Inc.*, 165 Cal.App.4th 1237, 1252, 82 Cal.Rptr.3d 440 (2d Dist. 2008) (to show failure to accommodate, the employee must have requested an accommodation).

Plaintiff's other complaints about his treatment at work, as discussed regarding his discrimination claim, similarly have no relation to his disability: he claims that Troy "attacked" his effectiveness, he was "required to work 30 days straight," and he was "given conflicting instructions and directions" regarding the proposal. (Pl.'s Opp'n at 11.) Plaintiff does not contend that this treatment was any different from the way non-disabled employees were treated. *See Arteaga*, 163 Cal.App.4th at 344, 77 Cal.Rptr.3d 654. Thus, plaintiff

has failed to show that he was harassed or subject to a hostile work environment because of his disability; he certainly has not shown that the harassment was severe and pervasive.

Accordingly, plaintiff's claim of disability harassment based upon a hostile work environment under FEHA fails as a matter of law as to all defendants and the court will grant defendants' motion for summary judgment on that claim.

### D. *FEHA Retaliation Claim Against TTI*

FEHA makes it illegal for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). FEHA retaliation claims are evaluated under federal law interpreting Title VII cases. *Flait v. N. Am. Watch Corp.*, 3 Cal.App.4th 467, 475–76, 4 Cal.Rptr.2d 522 (2d Dist.1992).

 A plaintiff establishes a prima facie case of retaliation under FEHA by demonstrating: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the activity and the employment action. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003); *see Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005).

 Plaintiff asserts that his complaints to Pedone regarding the alleged affair between Parker and Kelsheimer were a protected activity for purposes of his retaliation claim. An employee's conduct may constitute protected activity for purposes of a retaliation claim not only when the employee opposes conduct that

ultimately is determined to be unlawful, but also when the employee opposes conduct that the employee reasonably and in good faith believes is unlawful, whether or not that belief is ultimately borne out. *Yanowitz,* 36 Cal.4th at 1043, 32 Cal. Rptr.3d 436, 116 P.3d 1123. Even if the alleged relationship between Parker and Kelsheimer is insufficient to support a viable discrimination or harassment claim, that fact alone does not defeat plaintiff's claim that he reasonably believed his complaints to Pedone opposed unlawful conduct. As a result, the court cannot rule out that plaintiff engaged in protected activity, especially since it must resolve all inferences in plaintiff's favor on a motion for summary judgment.

With respect to whether he suffered an adverse employment action, plaintiff has shown that he was reprimanded by Parker and ultimately terminated. This evidence is sufficient to constitute an adverse employment action for purposes of stating a viable retaliation claim.

■ The more difficult inquiry concerns whether the adverse employment actions are causally related to plaintiff's protected activity. "The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two." *Thomas v. City of Beaverton,* 379 F.3d 802, 812 (9th Cir.2004) (citing *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002)). Plaintiff has established that his conversation with Parker and subsequent implementation of the performance improvement plan took place soon after plaintiff complained of Parker's affair to Pedone. While not as close in time, plaintiff's termination occurred within months of his protected activity while he was on leave. Thus, plaintiff has met the burden of showing a prima facie case of retaliation.

Once an employee establishes a prima facie case, the employer is required to offer a legitimate, non-retaliatory reason for the adverse employment action. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir.2000); *Yanowitz,* 36 Cal.4th at 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation is removed, and the burden shifts back to the employee to prove the reason is pretextual. *Brooks,* 229 F.3d at 928; *Yanowitz,* 36 Cal.4th at 1042, 32 Cal.Rptr.3d 436, 116 P.3d 1123.

■ Defendants have offered a legitimate reason for placing plaintiff on a performance improvement plan. Defendants provided documentation of plaintiff's poor work performance and plaintiff admitted that he did a poor job in leading the CNG proposal. Plaintiff argues that evidence of his other, positive performance reviews helps to establish pretext. However, those reviews occurred before plaintiff held the position of program manager. Indeed, defendants point out that plaintiff received negative feedback from Parker in January 2008, before plaintiff had engaged in any protected activity that could possibly lead to retaliation. (*See* Parker Dep. Ex. 52.) Without more, plaintiff cannot establish pretext. *See Loggins v. Kaiser Permanente Int'l,* 151 Cal.App.4th 1102, 1112, 60 Cal.Rptr.3d 45 (4th Dist.2007) ("temporal proximity ... does not, without more" establish pretext).

Regarding the termination, defendants explain that plaintiff was terminated as a result of TTI's reorganization in light of the loss of its biggest contract and because of plaintiff's poor work performance. As explained above, this decision is a legitimate reason for the adverse employment action. Plaintiff argues that termination during a third leave of absence, when nothing has changed since the first two leaves,

shows that defendants were retaliating against him. However, defendants did show that something changed: the loss of TTI's biggest contract led to a company reorganization that necessitated the elimination of plaintiff's position. Plaintiff has not given the court any reason to disbelieve defendants' explanation. *See Grosz v. Boeing Co.,* 455 F.Supp.2d 1033, 1041 (C.D.Cal.2006) (when an employee's position is completely eliminated, pretext is difficult to establish).

Accordingly, plaintiff's claim of retaliation under FEHA fails as a matter of law and the court will thus grant TTI's motion for summary judgment on that claim.

#### E. *Wrongful Termination in Violation of Public Policy Claim Against TTI*

██ "In order to sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 1256, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994) (footnotes omitted).

Plaintiff's claim for wrongful termination in violation of public policy is derivative of his statutory claims. *See Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996) (citing *Jennings v. Marralle,* 8 Cal.4th 121, 135–36, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994)). As summary judgment has been granted on plaintiff's other claims, summary judgment is similarly granted on the public policy claim. *See Cavanaugh v. Unisource Worldwide, Inc.,* No. CIV–F–06–0119 AWI DLB, 2007 WL 915223, at *11 (E.D.Cal. Mar. 26, 2007). Accordingly, plaintiff's claim of wrongful termination in violation of public policy fails as a matter of law and the court will grant TTI's motion for summary judgment on that claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, GRANTED.